# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: October 20, 2016

NO. S-1-SC-34993

T.H. MCELVAIN OIL & GAS LIMITED PARTNERSHIP, a New Mexico limited partnership; KAREN ANN HANDLEY ANDERSON, an individual; SUSAN R. HANDLEY MCGREW, an individual; BILLIE L. PHILLIPS, an individual; BILLIE L. PHILLIPS RECOVERABLE TRUST DATED APRIL 23, 1996, BILLIE L. PHILLIPS Trustee; JUDY LYNN QUINT, an individual; RONALD CHARLES WEEBER, an individual; LUCILE ALICE NORTHCOTE TRUST DATED MAY 29, 1996, BILLIE L. PHILLIPS, Successor Trustee,

     Plaintiffs-Respondents,

v.

GROUP I: BENSON-MONTIN-GREER DRILLING CORP., INC., a Delaware corporation; ELIZABETH JEANNE TURNER CALLOWAY, an individual; KELLY R. KINNEY, an individual; KATHERINE P. MILLER, an individual; RONALD MICHAEL MILLER, an individual; VICKIE ROANN MILLER, an individual; THOMAS R. MILLER, an individual; FRED E. TURNER, LLC, a Delaware limited liability company; JOHN LEE TURNER, an individual; LINDA VOITL a/k/a LINDA DAVIS, an individual; ESTATE OF WILLIAM G. WEBB, deceased, JOHN G. TAYLOR, independent executor,

     Defendants-Petitioners,

GROUP II: CHERYL U. ADAMS, an individual; E'TWILA J. AXTELL, an individual; BP AMERICA PRODUCTION COMPANY, a Delaware corporation; COASTAL WATERS PETROLEUM COMPANY, INC., a Louisiana corporation; ENERGEN RESOURCES CORPORATION, an Alabama corporation; THE ESTATE OF ANNE B. LITTLE, FIRST

**SECURITY BANK OF NEW MEXICO, as personal representative; LANA GAY PHILLIPS, an individual; HENRIETTA SCHULTZ, an individual; THE FRANK AND HENRIETTA SCHULTZ REVOCABLE TRUST DATED JANUARY 2, 1990, HENRIETTA SCHULTZ, Trustee; SCHULTZ MANAGEMENT, LTD., a Texas limited partnership; J. GLENN TURNER, JR., LLC, a Delaware limited liability company; MARY FRANCES TURNER, JR. TRUST, JP MORGAN CHASE BANK, NA, Trustee,**

Defendants,

**GROUP III: ALL UNKNOWN CLAIMANTS OF INTEREST IN THE PREMISES ADVERSE TO THE PLAINTIFFS,**

Defendants.

and

**NO. S-1-SC-34997**

**T.H. MCELVAIN OIL & GAS LIMITED PARTNERSHIP, a New Mexico limited partnership; KAREN ANN HANDLEY ANDERSON, an individual; SUSAN R. HANDLEY MCGREW, an individual; BILLIE L. PHILLIPS, an individual; BILLIE L. PHILLIPS RECOVERABLE TRUST DATED APRIL 23, 1996, BILLIE L. PHILLIPS, Trustee; JUDY LYNN QUINT, an individual; RONALD CHARLES WEEBER, an individual; LUCILE ALICE NORTHCOTE TRUST DATED MAY 29, 1996, BILLIE L. PHILLIPS, Successor Trustee,**

Plaintiffs-Respondents,

v.

**GROUP I: BENSON-MONTIN-GREER DRILLING CORP., INC., a Delaware corporation; ELIZABETH JEANNE TURNER CALLOWAY, an individual; KELLY R. KINNEY, an individual; KATHERINE P. MILLER, an individual; RONALD MICHAEL MILLER, an individual; VICKIE ROANN MILLER, an individual; THOMAS R. MILLER, an individual; FRED E. TURNER, LLC, a**

**Delaware limited liability company; JOHN LEE TURNER, an individual; LINDA VOITL a/k/a LINDA DAVIS, an individual; ESTATE OF WILLIAM G. WEBB, deceased, JOHN G. TAYLOR, independent executor,**

Defendants,

**GROUP II: CHERYL U. ADAMS, an individual; E'TWILA J. AXTELL, an individual; LANA GAY PHILLIPS, an individual;**

Defendants-Petitioners,

and

**BP AMERICA PRODUCTION COMPANY, a Delaware corporation; COASTAL WATERS PETROLEUM COMPANY, INC., a Louisiana corporation; ENERGEN RESOURCES CORPORATION, an Alabama corporation; THE ESTATE OF ANNE B. LITTLE, FIRST SECURITY BANK OF NEW MEXICO, as personal representative; HENRIETTA SCHULTZ, an individual; THE FRANK AND HENRIETTA SCHULTZ REVOCABLE TRUST DATED JANUARY 2, 1990, HENRIETTA SCHULTZ, Trustee; SCHULTZ MANAGEMENT, LTD., a Texas limited partnership; J. GLENN TURNER, JR., LLC, a Delaware limited liability company; MARY FRANCES TURNER, JR. TRUST, JP MORGAN CHASE BANK, NA, Trustee,**

Defendants,

**GROUP III: ALL UNKNOWN CLAIMANTS OF INTEREST IN THE PREMISES ADVERSE TO THE PLAINTIFFS,**

Defendants.

**ORIGINAL PROCEEDING ON CERTIORARI**
**John A. Dean, Jr., District Judge**

Gallegos Law Firm, P.C.
Jake Eugene Gallegos
Michael J. Condon

Santa Fe, NM

for Petitioners Group I


Miller Stratvert P.A.
Dylan O'Reilly
Luke Salganek
Santa Fe, NM

for Petitioners Group II


Cuddy & McCarthy, LLP
John F. McCarthy, Jr.
Arturo L. Jaramillo
Y. Jun Roh
Santa Fe, NM

Nixon Shefrin Hensen Ogburn, P.C.
Herbert A. Delap
Greenwood Village, CO

for Respondents T.H. McElvain Oil & Gas Limited Partnership, et al.,


Carson Ryan LLC
Joel M. Carson, III
Roswell, NM

for Amicus Curiae Landmen's Association

# OPINION

**VIGIL, Justice.**

## I.  INTRODUCTION

{1}    The underlying claim giving rise to this controversy constitutes a collateral attack, requiring us to determine whether it is apparent on the face of a 1948 quiet title judgment that the district court, which entered said judgment, affirmatively lacked jurisdiction over certain parties because they were notified by publication. It is alleged that in the 1948 lawsuit such notice violated the Due Process Clause, depriving the district court of jurisdiction. Only when a party's whereabouts are not reasonably ascertainable following diligent search and inquiry can constructive notice substitute for personal notice of suit. Here, constructive service of process by publication satisfied due process and established the 1948 district court's personal jurisdiction. Therefore, the district court's 1948 quiet title judgment was not void, and, accordingly, we reverse the judgment of the Court of Appeals.

## II.  BACKGROUND

{2}    This opinion addresses the consolidated appeals of two groups of Defendants from a Court of Appeals ruling favorable to T.H. McElvain Oil & Gas Limited Partnership, et al., (Plaintiffs). *See T.H. McElvain Oil & Gas Ltd. P'ship v. Benson-Montin-Greer Drilling Corp.*, 2015-NMCA-004, ¶ 55, 340 P.3d 1277. The identities

of the numerous parties and undisputed facts underlying the case are as follows.

{3} In 1927 W.W. McEwan conveyed by general warranty deed fee-simple title in 160 acres of land in San Juan County, New Mexico (the Property) to Judson Wilson, Eva Wilson, and Mabel Wilson, as joint tenants with the right of survivorship. The Wilsons, according to that deed, were "of San Diego, California." The following year, on August 16, 1928, the Wilsons executed a general warranty deed in San Diego, conveying the Property to David Miller, subject to the following reservation:

> [E]xcepting and reserving to the grantors herein the oil and gas existing or found therein, with the right to enter on for prospecting or developing same, provided they must pay all damage to land or crops in prospecting or development.

{4} On March 14, 1931, David Miller conveyed by quitclaim deed his interest in the Property to his brother, Thomas Miller.[1] The quitclaim deed to Thomas Miller was silent as to any reservation clouding fee-simple title. Thomas Miller did not record the deed until April 29, 1937, after David Miller's death. David Miller had also bequeathed his property in full to Thomas Miller.

{5} Judson Wilson died on May 16, 1929, and Eva Wilson died on December 17,

---

[1]The record indicates that while David Miller had purchased the Property from the Wilsons, Thomas Miller may have contributed one-half of the purchase price to possess an undivided one-half interest in the Property.

1944, leaving Mabel Wilson as the only surviving joint tenant from the original W.W. McEwan deed. Nothing in the record indicates that after 1928 Judson and Eva Wilson took any action regarding the Property.

{6}     Mabel Wilson, the remaining joint tenant, lived in San Diego until her death in 1970. Mabel had married Charles Weeber prior to 1944, and thereafter went by her married name of Mabel W. Weeber. Following her death, Mabel's estate was probated in the Superior Court for San Diego County. Her estate identified an interest in residential property in San Diego, but made no claim to real property in New Mexico. Charles Weeber's estate similarly made no claim to real property in New Mexico upon his death in 1978.

{7}     On October 21, 1948, Thomas Miller filed a quiet title action in the District Court for San Juan County. In his complaint, Thomas Miller alleged that he was the owner in fee simple of a total of 931 acres in San Juan County (the Subject Acreage), with that acreage encompassing the 160-acre Property presently in dispute. Over fifty individuals were named as defendants—all of whom were named as defendants if living, or if deceased, by their unknown heirs—with Judson Wilson, Eva Wilson, and Mabel Wilson each making the list. Thomas Miller's attorney verified under oath the allegations of the complaint, which in part stated that

3

if any [d]efendants herein . . . still are living, and reside in or have their places of residence in the State of New Mexico, the said [d]efendants have secreted themselves so that service of process cannot be had upon them in this cause, and that the only way in which said [d]efendants can be served herein is by publication.

The complaint also alleged that any unknown heirs of deceased were "unknown to the [p]laintiff, and [p]laintiff has been unable to learn or determine the names, places of residence, Post Office addresses and whereabouts of the said unknown heirs, after diligent search and inquiry for the same." Based on the allegations in the verified complaint, service of process was accomplished by publication of a Notice of Action Pending in the *Times Hustler*, a weekly newspaper published in San Juan County—specifically Farmington, New Mexico. Notice of the action ran in the paper for four successive weeks.

{8}     On November 19, 1948, the Sheriff of San Juan County attempted to serve notice on all parties and submitted a sheriff's return stating that he

diligently searched and inquired for the [d]efendants, and each of them, in the above-entitled cause; that after such search and inquiry, I have been unable to find any of the [d]efendants in San Juan County, New Mexico, and I have been unable to find the Post Office addressees, places of residence, or whereabouts of the [d]efendants, or either of them.

No named defendant entered an appearance in the quiet title action, but some filed a disclaimer of interest in the Subject Acreage. As such, a quiet title judgment (the

4

1948 judgment) was entered on December 20, 1948, quieting title to the Subject Acreage—which, again, included the Property—in favor of Thomas Miller. The 1948 judgment provided that Thomas Miller was the owner of the Subject Acreage in "Fee Simple Title," and

> that after diligent search and inquiry the post office addresses, places of residence, and whereabouts of all the [d]efendants' herein [excepting those that filed a Disclaimer of Interest], all are unknown and ascertained; and that none of the said [d]efendants, other than those set out above, can be personally served with process in this cause.

{9} Thomas Miller thereafter exercised fee-simple ownership over the Property. On January 15, 1950, Thomas Miller conveyed the Subject Acreage to V.H. McRee while reserving three-quarters of the mineral rights. Then, in 1952, the Property was committed to the San Juan 32-5 federal unit area, of which Stanolind Oil and Gas Company was the operator. In 1953, Miller and McRee executed an oil, gas, and mineral lease with Stanolind Oil and Gas Company—and McRee reserved a one-eighth royalty interest in the minerals produced from the lease. Stanolind Oil Company became Pan American Petroleum Corporation in 1957 and made three assignments of its leasehold interest to J. Glenn Turner, ultimately conveying to him all of its interest appurtenant to the Property. J. Glenn Turner subsequently, in 1959, 1960, and 1961, made various other assignments of his mineral interests appurtenant

to the Property before dying in 1975 and leaving his property in trust for his son, J. Glenn Turner, Jr., and a Dallas bank.

{10}     In 1956 V.H. McRee conveyed his interest in the Property, by warranty deed, to H.F. and Freda Axtell. The Axtells thereafter executed separate trust agreements, naming E'Twila Axtell, Cheryl Adams, and Lana Phillips as beneficiaries. As of May 2008 the beneficiaries had become successor co-trustees of the trusts through a series of quitclaim transactions, thus entitling them to the one-eighth royalty interest stemming from McRee's one-quarter interest in the mineral rights, as conveyed by Miller in 1950.

{11}     As noted, Mabel Weeber—the surviving joint tenant from the McEwan deed—and her husband, Charles Weeber, died in the 1970s without claiming any property in New Mexico. The 1948 San Diego City Directory contains a listing for "Weeber Chas E (Mabel W)." The directory indicated that Charles and Mabel Weeber lived at 3767 Pershing Avenue. Historical versions of the directory, from 1926 and 1930, listed that same Pershing address for then-living Judson and Eva Wilson.

{12}     Again, there is nothing in the record indicating that Judson, Eva, or Mabel Wilson took any action regarding the Property after granting the 1928 deed to David Miller. Indeed, it was not until 2002 when a landman representing a Plaintiff in this

6

case, T.H. McElvain Oil & Gas Limited Partnership (T.H. McElvain Oil & Gas), informed Judy Lynn Quint and Ronald Charles Weeber—Mabel Wilson's successors-in-interest—that they were "the current owners of the oil and gas" interests appurtenant to the Property. Subsequently, Judy Lynn Quint and Ronald Charles Weeber entered into a five-year lease with T.H. McElvain Oil & Gas for $2,320.00 each.

{13}    The Property presently lies beneath Navajo Lake. In 2007 the appurtenant mineral interests greatly increased in value after Energen Resources successfully drilled coal seam gas wells in the underlying bedrock, and the Property was then-after incorporated into two Fruitland coalbed well-spacing units. Energen Resources holds hundreds of thousands of dollars in escrow pending resolution of this litigation—the primary dispute in this case, then, concerns ownership of those mineral rights.

{14}    The procedural posture of this case is as follows. In 2010 Plaintiffs—T.H. McElvain Oil & Gas, and other successors-in-interest to the 1927 joint tenancy granted to Judson Wilson, Eva Wilson, and Mabel Wilson by W.W. McEwan—filed suit to quiet title in the mineral interests appurtenant to the Property, initially making no mention of the 1948 quiet title judgment. After becoming aware of the 1948 judgment in the course of the pleadings, Plaintiffs were forced to change course and,

hence, challenged the constitutional effectiveness of the service of process made by publication on their predecessors-in-interest. In essence, Plaintiffs trace their claim to title back to the reservation of mineral interests in the 1928 deed from the Wilsons to David Miller, alleging that reservation is still effective because the allegedly insufficient service of process on the Wilsons voided the 1948 judgment as it applied to them.

{15}    The named Defendants in the instant suit fall into two groups: Group 1 (the Benson group) and Group 2 (the Axtell Group). The parties[2] in Group 1 counterclaimed to quiet title in the Property's oil and gas leasehold interests, while some parties in Group 2 counterclaimed to quiet title in a percentage of royalty interests flowing from the Property's mineral production. Group 1 Defendants derive their claim to title in the Property's oil and gas leasehold interests from the 1948 judgment in favor of Thomas Miller, and subsequent assignments made by Miller,

---

[2]The alignment of the parties and briefing in this case do not match the case caption. In its order the district court quieted the right, title, and ownership of the oil and gas leasehold estate appurtenant to the Property in Benson-Montin-Greer Drilling Corp., Inc.; Henrietta Schultz Trustee, Shultz Management Ltd.; Elizabeth Jeanne Turner Calloway; J. Glenn Turner, Jr., LLC; John Lee Turner; Fred E. Turner LLC; and Mary Francis Turner, Jr. Trust, J.P. Morgan Chase Bank N.A. Trustee. Those interests herein represent Group 1. The district court also quieted right, title, and ownership of a 3.125% mineral interest royalty in the Property in Cheryl U. Adams, E'Twila J. Axtell, and Lana Gay Phillips. Those interests herein represent Group 2.

Pan American Petroleum Corporation, and J. Glenn Turner. This Court has previously quieted title in the Property in favor of some of the Group 1 Defendants, following an ancillary probate of J. Glenn Turner's estate. *See M.H. Clark v. Benson-Montin-Greer Drilling Corp.*, No. 78-1260 (N.M. Sup. Ct. Jul. 12, 1982) (mandate). Group 2 Defendants derive their claim to title in royalty interests in the Property from V.H. McRee's reservation of a one-eighth royalty interest in the minerals produced by his lease to Stanolind Oil and Gas Company, and the subsequent transaction between V.H. McRee and Harrison and Freda Axtell that resulted in various trust agreements benefitted by the royalties.

{16} The parties filed cross-motions for summary judgment claiming title to the relevant mineral interests. To assist the district court in determining the ownership of the mineral rights at issue, the district court appointed a special master pursuant to Rule 1-053 NMRA. The special master determined that the Group 1 and Group 2 Defendants were entitled to summary judgment. The special master rejected the Plaintiffs' collateral attack on the 1948 quiet title judgment stating, "there is nothing to indicate that Thomas Miller had information regarding Mabel Weeber's whereabouts or that her whereabouts could be identified through reasonable diligence; therefore, the [c]ourt's conclusion in 1948 that she could not be located for

9

personal service appears appropriate." The special master determined that any investigation by Thomas Miller in 1948 would not have been likely to locate Mabel Weeber for service of process because she did not appear in the 1948 San Diego telephone directory as Mabel Wilson, and also because, by 1948, both Judson and Eva Wilson had died.

{17} The special master further concluded that the Plaintiffs' claim to title was barred by laches, waiver, and estoppel because "[t]he Wilsons and their successors did nothing to claim any ownership interest in the oil and gas connected to the property from the date of the deed to David [Miller] in 1928 until 2002 when McElvain Oil & Gas sought to enter into a lease." The special master also recognized that there was not an ancillary probate proceeding for either of the estates of Mabel or Charles Weeber that listed ownership interest in the Property as being part of their estates. The district court entered an order adopting the special master's report and recommendations, and ruled in favor of Defendants by granting their motion for summary judgment. Title was thus quieted in favor of the Group 1 and Group 2 Defendants.

{18} Plaintiffs then appealed the district court's order, and the Court of Appeals reversed the district court's grant of summary judgment in favor of Defendants. *T.H.*

10

*McElvain Oil & Gas*, 2015-NMCA-004, ¶ 4. The Court of Appeals concluded that Thomas Miller had failed to exercise diligence and good faith in notifying the Wilsons of the 1948 quiet title action, enabling Plaintiffs' collateral attack on the 1948 judgment for lack of personal jurisdiction. *Id*. ¶ 55. The Court of Appeals further concluded that the record did not support a finding of waiver, laches, and estoppel on the part of Plaintiffs. *Id*. ¶ 55. Group 1 and Group 2 Defendants then appealed the Court of Appeals opinion to this Court, and we granted certiorari. *See T.H. McElvain Oil & Gas Ltd. P'ship v. Benson-Montin-Greer, Drilling Corp.*, 2014-NMCERT-012.

{19}    This appeal rests upon the validity of the 1948 judgment quieting title to the Property in favor of Thomas Miller. Our determination of this ultimate issue rests upon whether the constructive service-of-process made by publication upon the Wilsons back in 1948 met constitutional standards of due process and was in accordance with the Rules of Civil Procedure then in effect. If the 1948 judgment is valid, Plaintiffs' right to the mineral interests is foreclosed and Defendants would be entitled to judgment as a matter of law. On the other hand, if the 1948 judgment is void, Plaintiffs may continue to adjudicate the merits of their claim in accordance with this opinion. To support their claim Plaintiffs make a collateral attack on the

11

1948 judgment, which can only succeed if "lack of jurisdiction appears affirmatively on the face of the judgment or in the judgment roll or record, or is made to appear in some other permissible manner." *See In re Estate of Baca*, 1980-NMSC-135, ¶ 11, 95 N.M. 294, 621 P.2d 511. In deciding the validity of the 1948 judgment we are called upon to consider not only the inherent complexities of a successful collateral attack on a longstanding judgment, but also the competing principles of finality in court judgments and the right to due process before the deprivation of one's property by another. Before we address these important legal principles in the context of the positions taken by the parties, we pause to articulate the legal standards of review for summary judgment in New Mexico with respect to the specific legal issues presented by this appeal.

## III. STANDARD OF REVIEW

{20}    The district court, upon cross motions for summary judgment, granted Defendants' motion. We review that grant of summary judgment de novo. *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 14, 143 N.M. 142, 173 P.3d 749. Summary judgment is appropriate where the facts are undisputed and the movant is entitled to judgment as a matter of law. *Id.* We view the facts in the light most favorable to the party opposing the motion and indulge all reasonable inferences in their favor. *Smith*

*v. Durden*, 2012-NMSC-010, ¶ 5, 276 P.3d 943. New Mexico Courts generally view summary judgment with disfavor. *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 8, 148 N.M. 713, 242 P.3d 280. Because the district court granted summary judgment in favor of Defendants, we must review the facts in the light most favorable to Plaintiffs.

{21}     A party moving for summary judgment must meet its initial burden of establishing a prima facie case for summary judgment. *See Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. Once a moving party meets that initial burden of establishing evidence that there are no issues of material fact, and that judgment as a matter of law may be appropriate, the burden shifts to the nonmoving party to alternatively establish evidence that issues of material fact remain requiring a trial on the merits. *See Romero*, 2010-NMSC-035, ¶ 10 (citations omitted). The "evidence adduced must result in reasonable inferences." *Id.* (citations omitted). "An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." *Id.* (internal quotation marks and citation omitted).

{22}     Defendants offer as evidence in support of their motion for summary judgment the 1948 quiet title judgment granting their predecessors-in-interest title to the

13

mineral interests in the Property, which they thereby assert entitles them to judgment as a matter of law. To successfully rebut Defendants' motion for summary judgment, Plaintiffs needed to adduce evidence establishing the existence of material issues of fact justifying a trial on the merits as to whether that 1948 judgment was void and did not bind Plaintiffs' predecessors-in-interest. *See Romero*, 2010-NMSC-035, ¶ 10. Void judgments can be subject to a collateral attack. *Nesbit v. City of Albuquerque*, 1977-NMSC-107, ¶ 12, 91 N.M. 455, 575 P.2d 1340. A litigant may collaterally attack a judgment by impeaching that judgment with matters outside of its record. *See Arthur v. Garcia*, 1967-NMSC-205, ¶ 6, 78 N.M. 381, 431 P.2d 759 (referring to *Lucus v. Ruckman*, 1955-NMSC-014, ¶ 12, 59 N.M. 504, 287 P.2d 68, *overruled on other grounds by Kalosha v. Novick*, 1973-NMSC-010, ¶ 12, 84 N.M. 502, 505 P.2d 845). Plaintiffs' rebut of Defendants' motion for summary judgment thus needed to advert to evidence demonstrating that the 1948 judgment should be set aside, and "one who challenges an unreversed judgment regularly entered has a very difficult task." *City of Albuquerque v. Huddleston*, 1951-NMSC-032, ¶ 12, 55 N.M. 240, 230 P.2d 972 (citations omitted).

{23}    We begin our examination of the merits of Plaintiffs' claim by acknowledging the high standard that

> in New Mexico that every presumption consistent with the record is indulged in favor of the jurisdiction of courts of general jurisdiction whose judgments cannot be questioned when attacked collaterally, unless lack of jurisdiction appears affirmatively on the face of the judgment or in the judgment roll or record, or is made to appear in some other permissible manner."

*In re Estate of Baca*, 1980-NMSC-135, ¶ 11. Here, Plaintiffs allege it is facially apparent that the district court entering the 1948 judgment affirmatively lacked personal jurisdiction over Plaintiffs' predecessors-in-interest due to insufficient service of process under the Due Process Clause, U.S. Const. amend. XIV, § 1, rendering the judgment void. Defendants, by contrast, assert that the service of process by publication in the 1948 district court proceedings met constitutional standards and was therefore effective for the district court to acquire personal jurisdiction over all of the defendants, including Plaintiffs' predecessor-in-interest, Mabel Weeber.

{24}    By our de novo review of Defendants' motion for summary judgment, we must also consider what is necessary to lodge a meritorious collateral attack on a longstanding judgment, where the collateral attack alleges voidness for the lack of personal jurisdiction because the method of personal service did not satisfy the requirements of due process. We review those interrelated issues of law de novo. *City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 5, 147 N.M. 693, 228 P.3d 477 (citations

omitted).

## IV. DISCUSSION

## A. Due Process Requires Adequate Notice

{25} The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits deprivation of property absent adequate procedural safeguards. U.S. Const. amend. XIV, § 1. The right to be heard in a court of law in response to proceedings seeking to deprive one of one's own property is a fundamental requirement of due process. "The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (internal quotation marks and citation omitted). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citations omitted). A judgment entered absent sufficient service of process upon a defendant violates due process and is void as to the defendant for want of personal jurisdiction. *See id.* at 313 (noting "the right of [a state's] courts to determine the interest of all claimants, resident or nonresident, provided its procedure accords full opportunity to be heard"); *see also Johnson v.*

16

*Shuler*, 2001-NMSC-009, ¶ 11, 130 N.M. 144, 20 P.3d 126 (Jurisdiction over the person embraces notions of contacts with the State and sufficiency of notice of the action." (internal quotation marks and citation omitted)); *In re Estate of Baca*, 1980-NMSC-135, ¶ 10, ([W]hen attacked for failure of service of process, [a judgment] is void as to those persons not served and their successors." (citations omitted)); Restatement (Second) on Judgments § 65 (Am. Law Inst. 1982) ("A court has authority to render judgment in an action when the court has jurisdiction of the subject matter of the action . . . and . . . [a]dequate notice has been afforded the party.")

{26} To meet the fundamental requirements of due process, a plaintiff must undertake a diligent and good faith effort to locate defendants and serve them personally with notice. *Campbell v. Doherty*, 1949-NMSC-030, ¶¶ 30-31, 53 N.M. 280, 206 P.2d 1145. But personal service is not always feasible, and in such cases constructive notice may satisfy due process. *Mullane*, 339 U.S. at 317. To meet constitutional standards,

> [t]he notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance, [b]ut if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

17

*Id.* at 314-15 (citations omitted).

{27}   Notice of court proceedings cannot just be a mere gesture, else it will not pass constitutional muster—"[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Mullane*, 339 U.S. at 315 (citations omitted).

{28}   Notice by publication, then, is proper in some circumstances as a last resort. *See Campbell*, 1949-NMSC-030, ¶ 31 ("Constructive service . . . is only resorted to from necessity." (internal quotation marks and citation omitted)). It was not always so. Surveying the history of constructive service, the United States Supreme Court explained that "in *in rem* or *quasi in rem* proceedings in which jurisdiction was based on the court's power over property within its territory, constructive notice to nonresidents was traditionally understood to satisfy the requirements of due process." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 796 n.3 (1983) (citing *Shaffer v. Heitner*, 433 U.S. 186, 196-205 (1977)). In *in personam* proceedings, by contrast, due process traditionally required personal service to establish a state court's personal jurisdiction over an individual who did not submit to jurisdiction. *Id.* (citations

18

omitted). This distinction is no longer relevant. In *Mullane*, the Supreme Court rejected the idea that the requirements of due process as they apply to constructive service vary depending on whether actions are *in rem* or *in personam*. 339 U.S. at 312; *see also Mennonite*, 462 U.S. at 796 n.3.

{29}     *Mullane* clarified, in all cases, the circumstances in which constructive notice by publication comports with due process. *Mullane* concerned the constitutional sufficiency of notice of a judicial settlement of a common trust fund account that was provided by the trustee to beneficiaries of the fund. 339 U.S. at 307. While beneficiaries previously had been notified about trust investments by mail—as all the names and addresses of beneficiaries from participating estates were contained in the bank's records—notice to beneficiaries about the judicial settlement of the common trust fund account was effected solely through publication. *Id.* at 309-10, 318. Further, the publication failed to identify each individual beneficiary or each participating estate or trust. *Id.* at 310. This, the Supreme Court held, violated the Due Process Clause and, therefore, constituted ineffective service of process. *Id.* at 319 ("The statutory notice to known beneficiaries is inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand.").

19

{30} Following *Mullane*, in *Mennonite Board of Missions v. Adams*, the Supreme Court held that an Indiana tax sale statute, which required notice to a mortgagee by publication only, violated due process. 462 U.S. at 798. The Supreme Court held that "unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*." *Id.* The Court explained that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Id.* at 800.

{31} In light of *Mullane* and *Mennonite*, we make clear that constructive service of process by publication satisfies due process if and only if the names and addresses of the defendants to be served are not "reasonably ascertainable." *Mennonite*, 462 U.S. at 800; *see also Schroeder v. City of N.Y.*, 371 U.S. 208, 212-13 (1962) ("The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable . . . ."); *Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute . . . where it is not reasonably possible or practicable to give more adequate warning . . . and [this means

20

of notification] creates no constitutional bar to a final decree foreclosing their rights."); *Clark v. LeBlanc*, 1979-NMSC-034, ¶ 6, 92 N.M. 672, 593 P.2d 1075 ("It is clear that due process prohibits the use of constructive service where it is feasible to give notice to the defendant in some manner more likely to bring the action to his attention." (citing *Mullane*, 339 U.S. 306)). In this case, we apply the principle articulated in both *Mennonite* and *Mullane* to determine if constructive service by publication satisfied due process and thereby established the personal jurisdiction of the 1948 district court over Plaintiffs' predecessors in interest. *See Harper v. Va. Dep't. of Tax'n*, 509 U.S. 86, 97-98 (1993) (holding that unless the Court " 'reserve[s] the question whether its holding should be applied to the parties before it,' " a new rule articulated by the Court will "apply retroactively" (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 539 (1991) (opinion of Souter, J.)).

{32}     Furthermore, we note that the New Mexico Rules of Civil Procedure, both as they exist today and as they existed in 1948, effectuate the requirements of due process set forth in *Mullane* and its progeny. *See, e.g.*, Rule 1-004(E) NMRA, comm. cmt. ("Rule 1-004(E)(1) makes explicit in the rule the general test for constitutionally-adequate service of process established in *Mullane* . . . ."). For example, in 1948, the New Mexico Rule of Civil Procedure 4(g) required a party

21

seeking to serve notice by publication to "'file a sworn pleading or affidavit, stating that any defendant'" had either gone out of state, concealed himself or herself within the state, otherwise avoided service, or that his or her name or place of residence are unknown. *Campbell*, 1949-NMSC-030, ¶ 24 (quoting Rule 4(g) of the Rules of Civil Procedure. *See* NMSA 1941, § 19-101(4)(g) (Vol. 2)). Such a showing required the clerk of the court to issue notice of the action in a publication in the county in which the action was pending. *See id.* Compliance with this rule was "'considered as sufficient notice of summons and valid in law,'" giving a district court personal jurisdiction over relevant defendants. *Id.* (quoting NMSA 1941, § 19-101(4)(g) (Vol. 2)). We also acknowledge that in light of *Mullane*, and recognized by this Court even before *Mullane*, the exercise of diligence and good faith to locate a defendant are implicit prerequisites to effective service of process by publication. *Campbell*, 1949-NMSC-030, ¶ 31 (citing NMSA 1941, § 19-101(4)(g) (Vol. 2)); *see also Mullane*, 339 U.S. at 315 (holding, with respect to known defendants, that "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it").

**B. Defendants' Predecessors-in-Interest Effected Service Upon Plaintiffs' Predecessors-in-Interest in Compliance With the Due Process Clause and the New Mexico Rules of Civil Procedure**

22

{33}     We consider whether the notice preceding the 1948 judgment satisfied the aforementioned standards of due process. Plaintiffs allege that Mabel Weeber, their predecessor-in-interest, did not receive adequate notice of the 1948 quiet title lawsuit filed by Thomas Miller. Therefore, they argue, the judgment granting Thomas Miller title and negating the Wilsons' 1928 reservation of mineral interests in the Property was void as to Mabel Weeber. Defendants argue that Plaintiffs' predecessors-in-interest were either unknown or missing in 1948, and that the district court thus acted in conformance with due process by authorizing constructive service of process on Mabel Weeber. Defendants point out that both Thomas Miller and the Sheriff of San Juan County affirmatively stated in 1948 that they could not ascertain through diligent effort the addresses or places of residence for certain defendants named in the complaint, including Mabel Weeber. Accordingly, Defendants assert that constructive service by publication in the *Times Hustler*, a local Farmington newspaper, satisfied due process.

{34}     The summary judgment granted to Defendants by the district court was based upon the recommendations of the special master, who in reaching his decision below distinguished the instant case from *Mullane*. In *Mullane*, the trustee had the names and addresses of the beneficiaries on its books, and it had used mail to communicate

with the beneficiaries in the past. In contrast to *Mullane*, the district court determined that "there is nothing to indicate that Thomas Muller had information regarding Mabel Weeber's whereabouts or that her whereabouts could be identified through reasonable diligence." We agree.

{35} We begin by examining the record of the 1948 district court proceedings. It reveals that the district court had before it a verified complaint and sheriff's return specifically indicating that, after diligent search and inquiry, Plaintiffs' predecessors-in-interest could not be located and personally served with process. The complaint contains two specific allegations necessary to authorize notice by publication under Rule 4(g). First, the complaint alleges that defendants living, or if deceased, their unknown heirs, at some time made a claim of interest in the Property, and "that after diligent search and inquiry" "the Plaintiff has been unable to learn or determine the names, places of residence, Post Office addresses and whereabouts [of the unknown heirs of any deceased defendants]." Second, the complaint contains the allegation that if any defendants were still living and residing in New Mexico they could not be located because they had secreted themselves so that personal service of process could not be effected. *See* NMSA 1941, § 19-101(4)(g) (Vol. 2).

{36} Thus, in 1948, Judson and Eva Wilson were deceased, Mabel Wilson had

married and went by the name of Weeber, and that married name—and in conjunction, her address under that name—was unknown. In order to personally serve Mabel Wilson with process, Thomas Miller would have been required to ascertain her new name and current address by first assuming that Mabel still lived in San Diego, based on the sale of the Property twenty years earlier to his brother, David Miller. Next, Thomas Miller would also have needed to acquire and search through the San Diego City Directory from either 1926 or 1930 to find Judson and Eva Wilson's San Diego address. Then, in order to identify Mabel Wilson as Mabel Weeber, he would have been required to search through San Diego's public records for Eva Wilson's death certificate which named her daughter Mabel Weeber as her informant, or alternatively, he would have been required to sift through twenty years of San Diego Union newspaper obituary notices in order to find Eva Wilson's obituary which named Mabel Weeber as the daughter she left behind. To get that far along in the search for Mabel Weeber, Thomas Miller would have been required to infer from the 1928 deed the exact familial relationship between Judson, Eva, and Mabel Wilson (father, mother, and daughter). Plaintiffs rely upon this labyrinth to lead to the discovery of Mabel Wilson, and they ask us to conclude today that because this path was ostensibly available and since Mabel Wilson was not located back then that

Miller failed to make a diligent inquiry into her whereabouts.

{37} We indulge all reasonable inferences in Plaintiffs' favor and conclude that the diligence that was necessary to locate Mabel Wilson back in 1948 did not require this level of effort or investigation, particularly in light of the facts, circumstances and resources available in 1948. Today, with relatively easy access to the internet, social media, and numerous global search engines, it is often not difficult to find persons whose identity and whereabouts are necessary to effectuate personal service of process. The world was quite different in 1948 in this regard. At the time, the task would have undoubtedly been significantly more onerous and time consuming. Further, the failure to find Mabel Weeber was not ipso facto evidence of a lack of diligence under Rule 4(g) in 1948. We conclude that the facts premised on Miller's verified complaint and the sheriff's return of service support the district court's conclusion "that after diligent search and inquiry the post office addresses, places of residence, and whereabouts of all of the Defendants herein . . . all are unknown," and, thus, Mabel Wilson's whereabouts were not readily ascertainable.

{38} Under the federal precedent interpreting due process requirements in the context of constructive service of process, we conclude that the constructive notice given in the underlying case was sufficiently "reasonably calculated" under the

26

circumstances as they existed in 1948. *Mullane*, 339 U.S. at 314; *see also Mennonite*, 462 U.S. at 799-800. Without additional evidence in the record that reveals a more direct path toward Mabel's identity and whereabouts in 1948, we reject Plaintiffs theory that, on its face, the 1948 quiet title judgment was premised upon an obvious lack of diligence on the part of Miller.

**C.      Plaintiffs Fail to Mount a Successful Collateral Attack on the 1948 Judgment**

{39}      Our conclusion that the record before the 1948 district court did not reveal an obvious lack of diligence to support a collateral attack finds support in other courts that also have been called upon to consider the reasonableness of the search efforts made in a prior, underlying case. In addition to the allegations in the record, we must consider the reasonableness of the efforts made by Thomas Miller in the search for Mabel Weeber. In determining the validity of the collateral attack on the 1948 judgment in this regard, we refrain from relying on speculation. Furthermore, regarding the reasonableness of the search Miller would have needed to make to ascertain Mabel Wilson's whereabouts, we note that other courts have held that even "a search of the conveyance records to identify parties with mineral interests would be unduly burdensome" and, in such cases, constructive notice may be "sufficient to satisfy the requirements of due process." *Davis Oil Co. v. Mills*, 873 F.2d 774, 791

27

(5th Cir. 1989); *see also Aarco Oil & Gas Co. v. EOG Res. Inc.*, 20 So. 3d 662, 669-670 (Miss. 2009).

{40}     For example, in *Davis Oil*, the holder of a mineral lease sought to invalidate a judicial sale of land on due process grounds because he was never given actual notice of the sale. 873 F.2d at 775. Still, the Fifth Circuit determined that constructive notice satisfied the requirements of due process because a search of the conveyance records would be unduly cumbersome. *Id.* at 789. The federal court of appeals explained:

> [W]e do not construe *Mennonite* as requiring actual notice to every party who has a publicly recorded interest in the subject property. . . . Accordingly, the reasonableness of constructive notice in a particular case may turn on the nature of the property interest at stake and the relative ease or difficulty of identifying such interest holders from the land records and also the existence of alternative means of insuring the receipt of notice.

*Id.* at 790 (citations omitted). The *Davis Oil* court noted, moreover, that the lessee there easily could have assured actual notice of the sale by paying a nominal fee to place his name and address on file in the mortgage records. *Id.* at 790-91. While the lessee did not waive his due process rights by failing to place his name and address on file, the availability of a means to protect his property interest informed whether his identity was reasonably ascertainable and, hence, whether due process required actual notice. *Id.* at 78-90.

28

{41}     More recently, in *Aarco Oil*, the Mississippi Supreme Court held that constructive notice by publication as to owners of mineral interests regarding a 1942 tax sale did not violate their due process rights. 20 So. 3d at 670. In that case, the plaintiffs attacked the validity of the 1942 tax sale because the county conducting the tax sale did not provide notice to the then-mineral owners, "either by mail or personal service, in violation of federal and state due process requirements." *Id.* at 667. The plaintiffs contended that the statutorily-required newspaper notices of the sale and "notice to the surface owners [only] was insufficient to satisfy the due process rights of the mineral owners." *Id.* at 668. The Mississippi Supreme Court disagreed, explaining that under *Mennonite* and *Mullane*, a governmental body is not obligated to undertake extraordinary efforts to discover the identity and whereabouts of all interested parties to the sale. *Id.* (citing *Mennonite*, 462 U.S. at 795; *Mullane*, 339 U.S. at 314). The Court additionally noted that the plaintiffs' predecessors could have protected their interests by ensuring their severed mineral interest was separately assessed for taxes. *Id.* at 670. The Court concluded that "because the identity and whereabouts of the owners of the severed mineral interests were not readily ascertainable, publication and notice to the surface owners [only] were sufficient to satisfy due process." *Id.* at 670.

29

{42} The conclusions reached in *Aarco Oil*, and *Davis Oil*—that publication notice afforded adequate due process on those facts—are equally applicable to the 1948 judgment in this case. Here, although not dispositive in our analysis, the owners of the mineral estate at the time of the 1948 judgment easily could have assured actual notice of the sale by taking some care to protect their investment. Neither Judson nor Eva Wilson had made a record of their ownership interests in probate following their deaths, and Mabel Wilson took no action during her lifetime to ensure an address was on record in the county where the Property was located. While not necessary to protect one's interest, we consider those facts persuasive to our instant analysis of whether Miller could have discovered the Wilsons' whereabouts with reasonable diligence. Miller, moreover, was under no obligation to comb San Diego records to identify individuals who might appear to have an interest in the Property and who were not reasonable ascertainable.

{43} As has been the case in other jurisdictions, and in line with the relevant federal precedent in *Mennonite* and *Mullane*, we again conclude that there was not a readily apparent lack of diligence by Miller in searching for Mabel Wilson's whereabouts. Mabel Wilson's address was not in any of the original deeds, and she had changed her name by the time of the 1948 action. Plus, she did not exercise ownership in the

30

Property between 1928 and 1948, and was only one of many potential interest holders named as defendants in Miller's complaint. In light of those facts, it is apparent from the record in the 1948 judgment that Mabel Wilson was not ascertainable. Nor can we conclude from the record facts before us that Miller was not diligent in searching for her whereabouts. As such, under guiding precedent, we cannot conclude that there was a violation of Mabel Wilson's due process. An absence of jurisdiction is thus not apparent from the face of the 1948 judgment, so the judgment was valid with respect to Plaintiffs' predecessors-in-interest. Plaintiffs thus fail to carry their burden in response to Defendant's motion for summary judgment, eliminating their claim to title in the mineral interests presently at issue.

{44} Further underlying that conclusion is the importance we must accord to finality in the context of court judgments. The disposition of a controversy before a court has far reaching consequences beyond the parties instantly affected. Quiet title judgments, in particular, contribute to the efficient keeping of land ownership records, and as the Landmen's Association amicus brief stated, are "the bedrock of the thousands of land and mineral transactions which take place each year and which involve every type of land transaction from a couple buying their first home to an oil and gas company spending millions of dollars to acquire leasehold acreage." In fact, it is common

31

practice for landmen and title examiners to rely upon county records and regularly entered judgments where a quiet title decree establishes the chain of title. Such quiet title judgments provide the certainty needed to ensure that one is the record owner of property in New Mexico to the exclusion of others.

{45}    This Court has said that "[j]udicial decisions, affecting title to real estate presumptively acquired in reliance upon such decisions, should not be disturbed or departed from except for the most cogent reasons, certainly not because of doubts as to their soundness." *Duncan v. Brown*, 1914-NMSC-013, ¶ 9, 18 N.M. 579, 139 P. 140; *see also Bogle Farms v Baca*, 1996-NMSC-051, ¶ 26, 122 N.M. 422, 925 P.2d 1184. That reasoning still rings true in present times, and is in part protected by the showing of proof needed in order to establish a valid collateral attack upon a quiet title judgment. Without evidence on the face of a quiet title judgment that the district court lacked jurisdiction, that judgment must be accorded finality in accordance with the reliance interests created as a consequence of the quieting of the title in its owner.

{46}    We thus conclude that the high standard for successfully mounting a collateral attack on this record is insurmountable in the instant case. Because we hold that Plaintiffs' suit constitutes an improper collateral attack on the validity of the 1948 judgment, we need not address whether the record also supports a finding of laches,

waiver, or estoppel.

**V.  CONCLUSION**

{47}  The district court correctly found that the suit brought by T.H. McElvain, et al., constituted an improper collateral attack on the 1948 judgment quieting title in Defendants' predecessors-in-interest. Constructive service by publication of the 1948 proceedings satisfied the due process of Plaintiffs' predecessors-in-interest; accordingly, the 1948 quiet title judgment is not void. The judgment of the Court of Appeals is reversed, and the district court's orders quieting title to the Property in Group 1 and Group 2 Defendants, and granting summary judgment in favor of said Defendants, affirmed.

{48}  **IT IS SO ORDERED.**


_____
**BARBARA J. VIGIL, Justice**

**WE CONCUR:**


_____
**CHARLES W. DANIELS, Chief Justice**

33

_____

**EDWARD L. CHÁVEZ, Justice**


_____

**JUDITH K. NAKAMURA, Justice**


**PETRA JIMENEZ MAES, Justice, dissenting.**

34

**MAES, Senior Justice (dissenting).**

{49} I respectfully dissent from the majority's opinion and adopt in full the opinion of the Court of Appeals, *T.H. McElvain Oil & Gas Ltd. P'ship v. Benson-Montin-Greer Drilling Corp.*, 2015-NMCA-004, 340 P.3d 1277, as my dissent. I find there was ample evidence and no need to speculate that the 1948 judgment was void because the Millers failed to undertake a good faith effort to provide the Wilson heirs sufficient notice of suit. The evidence presented shows that with minimal diligence on the part of Thomas Miller, the location of Mabel Weeber (née Wilson) would have been discovered. In fact, Ms. Weeber's location may have already been known by Mr. Miller. The warranty deed conveying the property to David Miller, and the warranty deed granting Judson, Eva, and Mabel Wilson joint tenancy with right of survivorship both indicated the parties were from San Diego, California. Even with this information, Mr. Miller only posted notice of suit in a New Mexico newspaper and the sheriff only searched San Juan County, New Mexico for the Wilsons. It is not a stretch of logic to assume a diligent plaintiff would take the extra step to post notice of suit in a San Diego newspaper or at least look to a resident listing in southern California with the information provided on the deeds. In sum, I believe the record shows the notice provided to Mabel Weeber was not constitutionally adequate, thus

35

making the quiet title action subject to collateral attack. The notice and the quiet title action should be void as to her descendants.

{50} Furthermore, I must note I do not believe *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) presents an issue related to this case. Though *Mullane* established a heightened standard for service by publication, the New Mexico notice statute from 1948 comported with *Mullane* and therefore we require no analysis as to the retroactive effect of the case.

{51} As the majority states and I agree, "a plaintiff must undertake a diligent and good faith effort to locate defendants and serve them personally with notice." *T. H. McElvain Oil & Gas Ltd. P'ship v. Benson-Montin-Greer Drilling Corp.*, 2016-NMSC-____, ¶ 26, ___ P.3d ___, citing *Campbell v. Doherty*, 1949-NMSC-030, ¶¶ 27, 30-31, 53 N.M. 280, 206 P.2d 1145. If personal service is not possible, plaintiffs have the option of alternative service, in this case service by publication. Notice by publication is not available though if a plaintiff has not first made a good faith effort to find the respondents in the plaintiff's case. The requirement for good faith effort can be found in the service by publication rule in effect in 1948, which stated notice by publication, effectuated by the court clerk, could be made when a "due inquiry and search has been made" by the plaintiff, and plaintiff has filed a sworn affidavit stating

36

as much. Rule 4(g) of the Rules of Civil Procedure. *See* NMSA 1941, § 19-101(4)(g) (Vol. 2). In *Mullane* the U.S. Supreme Court took issue with the New York notice by publication statute, which did not require naming of each defendant in the pending case, "[t]hus the only notice required, and the only one given, was by newspaper publication setting forth merely the name and address of the trust company, the name and the date of establishment of the common trust fund, and a list of all participating estates, trusts or funds." *Mullane*, 339 U.S. at 310. The company made notice this way despite having knowledge of the names and addresses of every person "who would be entitled to share in the principal" of the trust if it were to become distributable. *Id*. The Court found the trust company should have served all parties by mail. "Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318. In addition, the Court also found the New York statute violated the due process clause of the Fourteenth Amendment because the notice rule was not "reasonably calculated to reach those who could easily be informed by other means at hand." *Id*. at 319.

{52}     In contrast, the New Mexico 1948 rule required notice by publication to include "the names of the plaintiff and defendant to the cause, or if there is more than

37

one defendant to the cause the notice shall contain the name of said plaintiff and the name of the first of said defendants," which on its face appears to comport with the *Mullane* ruling. NMSA 1941, § 19-101(4)(g) (Vol. 2). Furthermore, as stated earlier, this type of notice is only available after the plaintiff has sworn in a statement the plaintiff was unable to find the  respondent by other means. Presently, there is no conflict between the New Mexico statute and the findings in *Mullane*, as it appears New Mexico was ahead of the curve in preserving due process rights through their notice statute.

**PETRA JIMENEZ MAES, Justice**

38