IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2024-NMSC-021**

**Filing Date: August 1, 2024**

**No. S-1-SC-39679**

**KENNETH B. ZANGARA and KATHY S. ZANGARA, Husband and Wife,**

Petitioners-Petitioners,

v.

**LSF9 MASTER PARTICIPATION TRUST,**

Respondent-Respondent,

and

**BANK OF AMERICA, N.A.,**

Respondent,

and

**LSF9 MASTER PARTICIPATION TRUST,**

Plaintiff-Respondent,

v.

**KENNETH B. ZANGARA and KATHY S. ZANGARA, Husband and Wife,**

Defendants-Petitioners,

and

**HIGH DESERT RESIDENTIAL OWNERS ASSOCIATION, INC., MAINTENANCE SERVICE SYSTEM, INC., and MEDIA WORKS ADVERTISING SPECIALTIES, INC.,**

Defendants.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Daniel E. Ramczyk, District Judge**

Kevin A. Zangara, P.A.
Kevin A. Zangara
Taos, NM

for Petitioners

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Elizabeth A. Martinez
Albuquerque, NM

Perkins Coie, LLP
Brien F. McMahon
San Francisco, CA
Aaron R. Goldstein
Los Angeles, CA

for Respondent

## OPINION

**ZAMORA, Justice.**

**{1}** In this appeal, we are called upon to review New Mexico's savings statute. *See* NMSA 1978 § 37-1-14 (1880). The savings statute suspends the running of an otherwise applicable statute of limitations when an action is timely commenced but later dismissed for any cause except negligence in prosecution. It supports the goal of judicially resolving controversies based on the substantive questions they present, not on procedural technicalities. Given the importance of New Mexico's policy favoring judicial resolution of disputes, we clarify the meaning of the phrase *negligence in its prosecution* in Section 37-1-14. We hold the phrase *negligence in its prosecution* is the same as a dismissal for failure to prosecute. We also reject as inconsistent with this holding any previous extensions of the negligence in prosecution exception to circumstances beyond a party's failure to timely take the steps necessary to bring the first-filed suit to a close. Our holding reaffirms the important purpose of our savings statute, which is to facilitate resolution of disputes on their merits.

## I. BACKGROUND

**{2}** The parties are Petitioners Kenneth Zangara and Kathy Zangara and Respondent LSF9 Master Participation Trust. References to non-party Bank of America, N.A. (BOA) provide context for the dispute. The case revolves around a $2.3 million loan secured by a mortgage on a home in Albuquerque, New Mexico. The note on the

loan was executed in 2005 by the Zangaras, who are the borrowers. Four years later, the Zangaras defaulted on the loan. The Zangaras filed for bankruptcy and within a few months, their personal liability on the loan was discharged in the bankruptcy proceedings and BOA was authorized to pursue an action for foreclosure on the property.

**{3}** In 2011, BOA, the Trust's predecessor in interest, filed a complaint for foreclosure of the mortgage securing the promissory note executed by the Zangaras. BOA's 2011 filing accelerated the debt and triggered the six-year statute of limitations for actions founded upon promissory notes. *See* NMSA 1978, § 37-1-3(A) (1880, amended 2015). BOA's action, which is not at issue on appeal, was stayed for several months while the parties explored loss-mitigation options. It was then dismissed in 2013 without prejudice for lack of prosecution. In 2015, BOA sold the note and assigned the mortgage to the Trust, which acquired a lost note affidavit and a copy of the note as part of the sale. But BOA did not specifically assign to the Trust its right to enforce the note.

**{4}** This appeal concerns the second foreclosure action the Trust filed against the Zangaras. There is no challenge to the timeliness of the filing of the first foreclosure action by the Trust. In its first action, the Trust alleged it had been assigned the mortgage by BOA and that BOA had negotiated the promissory note secured by the mortgage to the Trust by transferring possession of the note endorsed in blank. Exhibits to the Trust's complaint in the first action included a copy of the Affidavit of Lost Note executed by BOA and an endorsed copy of the Note endorsed in blank as well as a copy of the Mortgage and Assignment of the Mortgage to the Trust.

**{5}** The Zangaras moved to dismiss the Trust's first foreclosure action and on February 20, 2018, the district court granted the motion and dismissed the action without prejudice for lack of standing. Shortly after this dismissal, the Zangaras filed a petition to quiet title against the Trust and BOA. The Trust then filed a new suit for foreclosure against the Zangaras on August 20, 2018, invoking New Mexico's six-month savings statute. *See* Section 37-1-14.

**{6}** In its second suit, the Trust again alleged BOA had endorsed the note but did not repeat its previous allegation that BOA had transferred possession of the note to it. Instead, the Trust alleged BOA had lost the note and that the Trust had been assigned all of BOA's rights to enforce the lost note in an affidavit executed in June 2018, which was after the Trust's first foreclosure action was filed and shortly before its second foreclosure action was filed.

**{7}** The district court dismissed with prejudice the Trust's second foreclosure action based on its interpretation of Section 309 of the New Mexico Uniform Commercial Code. *See* NMSA 1978, § 55-3-309 (1992, amended 2023). That interpretation led the district court to conclude the savings statute did not apply because the Trust's initial foreclosure was "a nullity" that "cannot be used to bootstrap the timeliness of the 2018 action." It did not address the term *negligence in its prosecution*.

**{8}** The Trust appealed.[1] Relying on the right for any reason doctrine, the Court of Appeals focused on whether a dismissal for lack of jurisdiction comes within the negligence in prosecution exception to the savings statute. *Zangara*, A-1-CA-38169, mem. op. ¶ 8. The Court of Appeals resolved the savings statute issue in favor of the Trust based on its conclusion that the distinction it had drawn in a prior case between non-waivable and waivable defenses was outcome determinative. *Id.* ¶ 13. This led to the Court's conclusion that "a dismissal for lack of standing does not fall within the exception for negligence in the prosecution and that the instant action is therefore a continuation of the action that was dismissed for lack of standing." *Id.* In so doing, the Court of Appeals limited the reach of its prior opinion in *Barbeau v. Hoppenrath*. 2001-NMCA-077, 131 N.M. 124, 33 P.3d 675. *See Zangara*, A-1-CA-38169, mem. op. ¶ 13. We granted certiorari to address the meaning of the negligence in prosecution exception to the savings statute.

## II. ANALYSIS

**{9}** The Zangaras argue that the Trust was negligent in the prosecution of their first action because that action was dismissed for lack of prudential standing and thus, the savings statute does not apply. The Trust argues the negligence in prosecution exception is limited to failure to prosecute a suit with reasonable diligence, which is to say "failure to take the steps necessary to bring the suit to close." We agree with the Trust.

**{10}** We begin our analysis by determining the meaning of the term *negligence in its prosecution* in the savings statute. This calls for a de novo review. *Nguyen v. Bui*, 2023-NMSC-020, ¶ 14, 536 P.3d 482. In determining the meaning of a statute, we start with its language. We give statutory language "its ordinary and plain meaning unless the legislature indicates a different interpretation is necessary." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. "Unless ambiguity exists, this Court must adhere to the plain meaning of the language." *Leger v. Gerety*, 2022-NMSC-007, ¶ 27, 503 P.3d 349 (internal quotation marks and citation omitted). "We will not depart from the plain language of the statute unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or . . . deal with an irreconcilable conflict among statutory provisions." *Id.* (internal quotation marks and citation omitted). When statutory language is clear and unambiguous, we give effect to that language. *Draper v Mountain States Mut. Cas. Co.*, 1994-NMSC-002, ¶ 4, 116 N.M. 775, 867 P.2d 1157. These rules of statutory construction are consistent with New Mexico's Uniform Statute and Rule Construction Act, NMSA 1978, §§ 12-2A-1 to -20 (1997), which states in part: "Unless a word or phrase is defined in the statute or rule being construed, its meaning is determined by its context, the rules of grammar and common usage." Section 12-2A-2. There are cases in

---

[1]The Court of Appeals resolved the Section 309 issue in a footnote, relying on a prior precedential opinion. *Zangara v. LSF9 Master Participation Tr.*, A-1-CA-38169, mem. op. ¶ 1 n.1 (N.M. Ct. App. Nov. 8, 2022 (nonprecedential) (citing *CitiMortgage, Inc. v. Garcia*, 2023-NMCA-081, 538 P.3d 89)). The Section 309 issue is not before us.

which our statutory analysis "begins and ends with [the statute's] plain language." *Nguyen*, 2023-NMSC-020, ¶ 15. This is such a case.

**{11}**    The full text of the savings statute reads:

> If, after the commencement of an action, the plaintiff *fail therein for any cause*, *except negligence in its prosecution*, and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first.

Section 37-1-14 (emphasis added). We begin by reviewing the meaning of *any cause* since negligence in prosecution is the only exception to an action which fails for any other cause. *Cause* is an ordinary term of common usage which simply means "[s]omething that produces an effect or result." *Cause*, *Black's Law Dictionary* (12th ed. 2024). A legal action can fail for many causes, including lack of subject matter jurisdiction, service of process problems, improper joinder, improper venue, lack of standing, and even simply a failure to attach requisite documents. *See*, *e.g.*, Rule 1-012(H) NMRA ("Waiver or preservation of certain defenses"); *cf. Hall v. Northside Med. Ctr.*, 2008-Ohio-4725, ¶ 36, 897 N.E.2d 717 (Ohio Ct. App. 7th Dist. 2008) (finding that failure to file requisite affidavit of merit in medical malpractice was not a "failure on the merits" so plaintiff could avail itself of savings statute). Because we find no ambiguity in the word *cause* as it is used in Section 37-1-14, we adhere to its plain meaning. *Leger*, 2022-NMSC-007, ¶ 27. We conclude *any cause* as used in our savings statute means any disposition without prejudice that "produces" or results in the failure of the first-filed action. The only exception to *any cause* is the failure of the first-filed action for negligence in prosecution.

**{12}**    In the context of our savings statute, we have already equated negligence in prosecution with dismissal for failure to prosecute. *Gathman-Matotan Architects & Planners*, *Inc. v. Dep't of Fin. & Admin.* (*G-M Architects*), 1990-NMSC-013, ¶ 8, 109 N.M. 492, 787 P.2d 411. We are aware of no definitions of the term *negligence in its prosecution* in our Supreme Court caselaw or in our statutes that are contrary to equating the plain language of that phrase with dismissal for failure to prosecute. A dismissal for failure to prosecute is also referred to as dismissal for want of prosecution. *Dismissal*, *Black's Law Dictionary* (12th ed. 2024). "Dismissal for want of prosecution" means a "court's dismissal of a lawsuit because the plaintiff has failed to pursue the case diligently toward completion." *Id.* Similarly, we have long defined the failure to diligently prosecute a suit with reasonable diligence as the failure to take the steps necessary to bring the suit to a close. *Emmco Ins. Co. v. Walker*, 1953-NMSC-074, ¶ 4, 57 N.M. 525, 260 P.2d 712. *See also* Rule 1-041(E) NMRA (addressing dismissal for failure to take significant action and reinstatement for good cause shown).

**{13}**    For these reasons, we hold the term *negligence in its prosecution* in Section 37-1-14 means dismissal for failure to prosecute. If we were to hold otherwise and determine the meaning of the phrase *negligence in its prosecution* hinged only on the word *negligence*, there would be no limits on a litigant's ability to challenge an opposing party's reliance on Section 37-1-14. This would render superfluous the language in the

statute that allows a plaintiff to bring a second action within six months of a dismissal without prejudice of the first action *for any cause* except that of negligence in prosecution.

**{14}** Our plain language analysis does not result in a mistake or absurdity that the Legislature could not have intended. *See Leger*, 2022-NMSC-007, ¶ 27. Nor does it result in an irreconcilable conflict. *Id.* Mistake or absurdity would ensue only if we ignored the plain language of the statute and adopted an expansive interpretation of the negligence in prosecution exception. Were we to do that, our courts would be forced to confront confounding questions of which suit-ending mistakes were sufficiently negligent to trigger the exception to the savings clause. We have found no indication our Legislature intended such an interpretation nor have the Zangaras provided any authority to support their claim that the availability of the savings statute turns on a case-by-case determination of whether there was negligence of any sort in the filing of the first action.

**{15}** Our prior caselaw is also consistent with our interpretation of what constitutes negligence in prosecution under the savings statute. We first addressed the savings statute in *Harris v. Singh*. 1933-NMSC-091, 38 N.M. 47, 28 P.2d 1. There, the plaintiff in the first action sued to recover on a promissory note executed by an individual named Rattn Singh. *Harris*, 1933-NMSC-091, ¶ 3. In the second action, the plaintiff alleged instead that Mr. Singh had executed the promissory note on behalf of a partnership, also named Rattn Singh. *Id.* The question then was whether the second action was the same as the first, which would allow the plaintiff the benefit of the savings statute. In describing the savings statute, we stated:

> Here we find leniency in the statute itself. It extends even to one who has so far failed in his first action as to be under the necessity of commencing a new suit. *In terms it governs every case of failure except negligence in prosecution*. An exception from this broad language, by construction, should have good reason to support it.

*Id.* ¶ 15 (emphasis added). In *Harris*, we explained the leniency in our savings statute governed *every case of failure* except one. Noting that the only change in the second action from the first was the use of Rattn Singh's name as that of the partnership and that the new action sought recovery on the same transaction with the same measure of damages, we held the savings statute applied. *Id.* ¶ 20.

**{16}** Our focus on construing our savings statute liberally so that its terms "govern[] every case of failure except negligence in prosecution," undergirds our handful of subsequent decisions addressing the savings statute. *Id.* ¶ 15. We determined that when the district court exercises its inherent discretion to dismiss a stale claim for failure of prosecution and makes complete findings of fact and conclusions of law, the plaintiff cannot avail themselves of the savings statute. *Benally v. Pigman*, 1967-NMSC-148, ¶ 11, 78 N.M. 189, 429 P.2d 648. By contrast, where dismissal is not based on the inherent power of the court to dismiss stale claims, and there are no findings and conclusions that the case was dismissed "by reason of the negligence of plaintiffs in

prosecuting that cause," the plaintiff can avail themselves of the savings statute. *Id.* ¶ 14.

**{17}** In *Team Bank v. Meridian Oil Inc.*, we held that the trial court may not transfer venue of a misfiled suit. 1994-NMSC-083, ¶¶ 11-13, 118 N.M. 147, 879 P.2d 779. We described our holding as one that "encourages plaintiffs to bring their suits in the proper venue and discourages 'forum shopping.'" *Id.* ¶ 12. But we pointed out our holding did not infringe on the plaintiff's "substantive rights" because the plaintiff could avail themselves of the savings statute after dismissal for lack of venue. *Id.* We again commented upon our savings statute when we rejected a claim by third parties that the trial court could not dismiss their third-party complaint because the statute of limitations had run. *U.S. Fire Ins. Co. v. Aeronautics, Inc.* (*Aeronautics*), 1988-NMSC-051, ¶ 5, 107 N.M. 320, 757 P.2d 790. In rejecting the third parties' contention that the statute of limitations had run, we explained the dismissal of their third-party complaint for improper joinder did not preclude their ability to file a new claim pursuant to the six-month savings statute. *Id.*

**{18}** In *G-M Architects*, we reiterated that the savings statute applies "except when the dismissal was based on the plaintiff's failure to pursue his claim." 1990-NMSC-013, ¶ 8 (internal quotation marks and citation omitted). We specifically rejected the notion that the savings statute required the trial court to make specific findings of fact regarding plaintiff's negligence and concluded "dismissal for failure to prosecute is functionally the same as a dismissal for negligence in prosecution." *Id.*; *cf. King v. Lujan*, 1982-NMSC-063, ¶ 8, 98 N.M. 179, 646 P.2d 1243 (noting that "courts should not distinguish between a plaintiff who takes no action before the limitations period expires and a plaintiff who files a complaint before the period expires but who thereafter takes no action").

**{19}** Our steady focus on protecting plaintiffs' substantive rights is consistent with "New Mexico's policy favoring access to judicial resolutions" as embodied in our savings statute. *Foster v. Sun HealthCare Grp.*, 2012-NMCA-072, ¶ 7, 284 P.3d 389. This facilitates controversies being decided on their merits instead of on procedural technicalities. *Id.* It is the prerogative of the Legislature, not this Court, to extend the reach of the savings statute beyond the sole exception for negligence in prosecution that has been the applicable law for almost 150 years. *See Cartwright v. Pub. Serv. Co. of N.M.*, 1961-NMSC-074, ¶ 8, 68 N.M. 418, 362 P.2d 796 (noting the savings statute first appears in 1880).

## III.    *BARBEAU* **AND ITS PROGENY ARE NO LONGER GOOD LAW**

**{20}** The Court of Appeals held that the Trust's lack of prudential standing in the first case it filed did not prevent it from availing itself of the savings statute. *Zangara*, A-1-CA-38169, mem. op. ¶ 13. We affirm that result but disagree with the Court of Appeals' analysis. We take this opportunity to reject the analyses previously relied upon by the Court of Appeals and in so doing, we overrule *Barbeau*.

**{21}** The Court of Appeals observed caselaw on the negligence in prosecution exception to the savings statute "was not a model of clarity." *Zangara*, A-1-CA-38169, mem. op. ¶ 10. It doubted that *Barbeau* "can be squared with the plain language and purpose of the Savings Statute." *Id.* ¶ 11, n.3. Relying on *Amica Mut. Ins. Co. v. McRostie*, 2006-NMCA-046, 139 N.M. 486, 134 P.3d 773, the Court of Appeals reasoned the distinction "between waivable and nonwaivable defenses dictates the outcome of this appeal because, unlike subject matter jurisdiction, lack of standing is a waivable defense." *Zangara*, A-1-CA-38169, mem. op. ¶ 13. The Court of Appeals therefore held "that a dismissal for lack of standing does not fall within the exception for negligence in the prosecution and that the instant action is therefore a continuation of the action that was dismissed for lack of standing." *Id.* ¶ 13. Under this rationale, only nonwaivable defenses such as subject matter jurisdiction can fall within the negligence in prosecution exception to the savings statute. We reject that analysis and any analyses that "appl[y] the negligent prosecution exception to circumstances in which the theory of negligence was not based on a failure to timely take the steps necessary to bring the first-filed lawsuit to a close." *Id.* ¶ 11. The confusion appears to have started with *Barbeau*.

**{22}** The *Barbeau* plaintiffs timely filed a personal injury action in federal district court in Oregon. *Barbeau*, 2001-NMCA-077, ¶ 1. Within the six-month window provided by Section 37-1-14, they then filed a second action in New Mexico state court after the first action had been dismissed. *Id.* ¶ 5. The first action was dismissed by the Oregon federal magistrate for lack of personal and subject matter jurisdiction. *Id.* ¶ 4. The Court of Appeals noted that by "alleging that the plaintiffs and one of the defendants were all citizens of Oregon, Barbeaus defeated diversity and eliminated subject matter jurisdiction. Therefore, the claim was . . . improperly filed in Oregon federal court." *Id.* ¶ 3.

**{23}** Conceding that in *G-M Architects* we "held that failure to prosecute and negligence in the prosecution were one in the same for purposes of Section 37-1-14," the Court of Appeals nonetheless rejected that reasoning and looked to other jurisdictions for guidance because "New Mexico case law ha[d] not comprehensively defined what constitutes 'negligence in the prosecution.'" *Barbeau*, 2001-NMCA-077, ¶ 12. This led the *Barbeau* Court to adopt a holding of the Iowa Supreme Court that "when plaintiffs had knowledge of the facts that would deny them jurisdiction, their failure to file in the correct forum constituted negligence in prosecution." *Id.* ¶ 13 (internal quotation marks omitted) (citing *Sautter v. Interstate Power Co.*, 563 N.W.2d 609, 611 (Iowa 1997)). Contrary to our approach, the Iowa Supreme Court's interpretation of their savings statute looks "not on how aggressively" the plaintiff pressed their first suit, but on "how unreasonable it was for them to bring or pursue it without a factual basis for its most elementary requirement." *Sautter*, 563 N.W.2d at 611. As we did in *Harris*, we reject the Iowa Supreme Court's more expansive and fact-intensive interpretation of its exception to their savings statute and conclude that *Barbeau*'s adoption of that interpretation was mistaken.

**{24}** *Barbeau* is inconsistent with the plain language and purpose of our savings statute. It is also inconsistent with our prior analyses of Section 37-1-14, particularly in *Harris*, *G-M Architects*, and *Aeronautics*. Accordingly, we overrule *Barbeau*.

**{25}** We also reject the analyses relied upon by the Court of Appeals in *Amica* and *Foster*, neither of which limited the negligent prosecution exception to circumstances in which there was a failure to timely take the steps necessary to bring the first-filed suit to a close. In *Amica*, the Court of Appeals held that a subrogation action dismissed for improper venue did not fall within the negligence in prosecution exception to the savings statute. 2006-NMCA-046, ¶ 1. The *Amica* Court distanced itself from *Barbeau* by explaining the *Barbeau* reasoning did not "automatically transfer to the facts" before it. 2006-NMCA-046, ¶ 16. It also observed:

> While we cannot say that Plaintiff was free of carelessness in its lack of basis for venue . . . , we are not prepared to extend *Barbeau* and conclude that the circumstances in the present case constitute negligent prosecution.

*Id.* The *Amica* Court properly focused on the "policy favoring access to judicial resolution of disputes, including that embodied in Section 37-1-14." *Id.* ¶ 17. To get around *Barbeau*, the Court of Appeals in *Amica* focused its inquiry on whether dismissal for improper venue was a waivable or nonwaivable defense. *Amica*, 2006-NMCA- 046, ¶¶ 15-17. We reject this analysis as inconsistent with the language of our savings statute, the statute's purpose to facilitate resolution of issues on the merits, and this Court's prior caselaw.

**{26}** In *Foster*, the Court of Appeals took a different approach than it had in *Amica* and relied more directly on *Barbeau*. Although it acknowledged that New Mexico policy favors access to judicial resolution, it followed *Barbeau*'s directive "to look at the evidence of what the plaintiff knew at the time he commenced his [first] action." *Foster*, 2012-NMCA-072, ¶ 24. It then broadly defined due diligence in prosecution and established a test that required evidence of what the plaintiff knew about the defendants' citizenship at the time he filed his initial complaint in federal court. *Id.* ¶¶ 23-24. This is a much broader exception than we recognized in *Harris* and *G-M Architects* and is similar to Iowa's requirement that a party prove the first action did not fail on account of their negligence. *See Sautter*, 563 N.W.2d at 611. Accordingly, we reject the analysis relied upon in *Foster*.

**{27}** For the reasons stated above, we overrule *Barbeau* and reject and overrule prior opinions of the Court of Appeals which extended the negligence in prosecution exception to circumstances beyond a party's failure to timely take the steps necessary to bring the first-filed suit to a close.

## IV.    CONCLUSION

**{28}** We hold the term *negligence in its prosecution* in Section 37-1-14 is functionally the same as a dismissal for failure to prosecute and we conclude dismissal of the

Trust's first foreclosure action for lack of standing was not negligence in prosecution under Section 37-1-14. We affirm the result the Court of Appeals reached on this issue below but we reject the analysis the Court of Appeals relied upon to reach that result. We also overrule and reject any extensions of the negligence in prosecution exception under Section 37-1-14 in prior Court of Appeals opinions to the extent they are inconsistent with our holding in this case.

**{29}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**JULIE J. VARGAS, Justice**

**FRANCIS J. MATHEW, Judge**
**Sitting by designation**