The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: April 24, 2025

**NO. S-1-SC-40119**

**BOKF, N.A.,**

Plaintiff,

v.

**THE UNKNOWN HEIRS AND DEVISEES AND LEGATEES OF LINORA P. PACHECO, Deceased, JOSE PACHECO, SANTA FE COMMUNITY HOUSING TRUST, NEW MEXICO MORTGAGE FINANCE AUTHORITY, and OCCUPANTS OF THE PROPERTY,**

Defendants,

and

**ASHOK KAUSHAL,**

Appellant-Petitioner/Cross-Respondent,

v.

**SANTA FE COMMUNITY HOUSING TRUST,**

Appellee-Respondent/Cross-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Bryan Biedscheid, District Judge**

Ferrance Law, P.C.
David A. Ferrance
Albuquerque, NM

for Petitioner/Cross-Respondent

VanAmberg, Rogers, Yepa, Abeita, Gomez & Wilkinson LLP
Ronald J. VanAmberg
Santa Fe, NM

for Respondent/Cross-Petitioner

**OPINION**

**HUDSON, Judge.**

{1}    Fundamental guarantees of fairness, notice, the opportunity to be heard, and due process undergird both our judicial system and the validity of judgments affecting the rights of parties impacted by those judgments. This case presents an instance where our obligation to protect those guarantees must take precedence over the consideration and decision of the discrete legal issues that bring this case before us. At issue is the established legal principle that "[a] judgment entered absent sufficient service of process upon a defendant violates due process and is void as to the defendant for want of personal jurisdiction." *T.H. McElvain Oil & Gas Ltd. P'ship v. Grp 1: Benson-Montin-Greer Drilling Corp.*, 2017-NMSC-004, ¶ 25, 388 P.3d 240.

{2}    Upon review of the proceedings in this matter, we conclude that the underlying judgment of foreclosure may be void based on the lack of service of process on the unknown heirs, legatees, and devisees of the original debtor and mortgagor, Linora P. Pacheco (Linora Pacheco), who were named as parties under NMSA 1978, Section 39-5-15 (1937), and separately based on the failure to name and obtain service of process on all her known heirs. Ultimately, we hold that this

matter must be remanded to the district court for further fact-finding to determine whether the underlying judgment is void.

## I. PROCEDURAL HISTORY

{3} Consideration of the sufficiency of service of process on claimants to the underlying property and the validity of the judgment of foreclosure requires a granular recitation of the procedural history in the district court.

### A. The Complaint and Initial Service

{4} Linora Pacheco executed a promissory note and deed of trust in favor of BOKF, N.A. DBA Bank of Albuquerque, a National Banking Association (BOKF). The deed of trust granted BOKF a security interest in Linora Pacheco's property in Santa Fe, New Mexico (the Property). After Linora Pacheco defaulted on her obligations under the promissory note, BOKF brought suit seeking judgment against Linora Pacheco on the promissory note and for foreclosure of the Property under the deed of trust.

{5} The *Complaint for Foreclosure* was filed on December 23, 2014. The complaint named Linora Pacheco and John Doe Pacheco and the junior lien holders, Santa Fe Community Housing Trust (the Trust) and New Mexico Mortgage Finance Authority, as the named defendants. ABC Corporations I-X, XYZ Partnerships I-X, John Does I-X, Jane Does I-X, and the Unknown Heirs and Devisees of any of the

2

above, if deceased, and Occupants of the Property were named as fictional defendants.

{6}     At BOKF's request, the district court issued a summons on December 29, 2014, for the unnamed Occupants of the Property. Summonses were also issued for Linora Pacheco and John Doe Pacheco for service at the Property but were not returned.

{7}     Summons returns showing service on Raymond Pacheco[1] and Bryan Pacheco as Occupants of the Property were filed on January 26, 2015.

{8}     On March 15, 2015, BOKF filed a *Motion for Service by Publication* seeking leave to serve Linora Pacheco and John Doe Pacheco by publication. As grounds for the motion, BOKF recited service could not be made on Linora or John Doe Pacheco at the Property because they lived in "Vegas," and the firm BOKF hired to conduct a skip trace was "unable to locate a good address and phone number" for Linora and John Doe Pacheco. The *Motion for Service by Publication* included *Affidavits of Due Diligence* by the process server and the investigation agency. The affidavit by the process server states, in pertinent part:

---

[1]Raymond Pacheco is also variously referred to as Ray or Raymundo at different points in the record. We refer to him as Raymond for purposes of consistency.

> 1/4/2015 12:35 pm [Affiant] attempted service on Linora P. & John Doe Pacheco at [the Property], spoke to Ray Pacheco who stated that him and Bryan Pacheco reside here, they are Linora's sons but her and her husband live in Vegas now. . . . [Affiant] served Occupants of the Property at [the Property] by hand delivering the documents to Ray Pacheco.

The affidavit does not indicate whether the affiant asked Raymond for an address for Linora Pacheco. The affidavit by the investigation agency states, in pertinent part:

> I, [Affiant], being duly sworn upon oath state that on the 3rd day of February, 2015 at 8:12 am, I:

> Located a most current address for the above subject. Details of locate:

> Additional Information pertaining to this Service:
> 2/3/2015 8:12 am [Affiant] is unable to locate a good address or phone number for Linora & John Doe Pacheco.

{9}     The district court entered an order to allow service by publication on Linora Pacheco and John Doe Pacheco. Notice was published in the Albuquerque Journal. Notice was not published in a newspaper in any of the following: the cities of Santa Fe (New Mexico) or Las Vegas (New Mexico or Nevada), or the counties of Santa Fe (New Mexico), San Miguel (New Mexico), or Clark (Nevada). The *Affidavit of Publication* filed by BOKF shows publication dates of May 25, June 1, and June 8,

2015. No motion for default was filed by BOKF. No default was entered by the district court clerk pursuant to Rule 1-055(A) NMRA (1999).[2]

**B.  Linora Pacheco's Death**

{10}  Linora Pacheco died on September 16, 2015. On October 15, 2015, the Trust filed a *Suggestion of Death* indicating "the Defendant Linora P. Pacheco is deceased and died September 2015." The *Suggestion of Death* was only served on counsel for BOKF. There is nothing in the record suggesting that the known heirs of Linora Pacheco, her sons Bryan Pacheco and Raymond Pacheco, were served or that any other potential heirs were identified and served pursuant to Rule 1-004 NMRA (2011)[3] and Rule 1-025 NMRA with the *Suggestion of Death*. After the foreclosure sale, the identity of the two other surviving sons, Richard Pacheco and Joseph Pacheco[4], were determined by the parties to this appeal, Ashok K. Kaushal (Kaushal) and the Trust. Bryan Pacheco died on June 3, 2016. Richard Pacheco died on October 2, 2017, leaving two heirs, Claudia Urioste and Richard Martin Pacheco.

---

[2]We refer to the 1999 version of Rule 1-055 that was in effect at the time of the Complaint for Foreclosure. Rule 1-055 was amended in 2016 and 2019. However, the amendments would not affect our substantive analysis.

[3]We refer to the 2011 version of Rule 1-004 that was in effect at the time of the Complaint for Foreclosure. Portions of Rule 1-004 that are not at issue in this case were amended in 2021. However, the amendments would not affect our substantive analysis.

[4]Joseph Pacheco is also variously referred to as Joe or Joseph R. Pacheco at different points in the record. We refer to him as Joseph for purposes of consistency.

## C. The Amendment of Complaint and Substitution of Parties

{11}     BOKF did not file a motion seeking to substitute the unknown heirs, devisees, or legatees of Linora Pacheco parties under Rule 1-025 after the *Suggestion of Death* was filed in October 2015. Rather, on June 13, 2016, BOKF filed a *Motion to Amend Complaint for Foreclosure*. The motion recited as a basis for amendment, "the Complaint should be amended to substitute name the Unknown Heirs Devisees or Legatees of Linora P. Pacheco, deceased." The motion also recited as a basis for amendment, "Plaintiff has been informed that [Linora Pacheco] is deceased. Therefore, the Complaint should be amended to substitute name the Unknown Heirs, Devisees or Legatees of [Linora Pacheco], deceased."

{12}     BOKF filed the *Amended Complaint for Foreclosure* on June 22, 2016. The *Amended Complaint for Foreclosure* named "The Unknown Heirs, Devisees and Legatees of Lenora [sic] P. Pacheco, Deceased" as the primary substituted defendants for Linora Pacheco. It also added Jose Pacheco as a defendant as the alleged spouse of Linora Pacheco. It is not clear how BOKF determined that Jose Pacheco was the alleged spouse of Linora Pacheco. Neither Raymond Pacheco nor Bryan Pacheco were named as parties despite knowledge of their identity, relation to Linora Pacheco, and whereabouts.

**{13}** The *Amended Complaint for Foreclosure* alleges:

> 3. Upon information and belief, Linora P. Pacheco is deceased and there may be heirs of said decedent *who are unknown to Plaintiff*, but who may claim an interest or right in and to the Property that is the subject matter of this action. *Plaintiff has conducted a diligent search to ascertain the names and locations of such persons; however, such information is unknown and cannot be ascertained.* Therefore, such unknown heirs have been made Defendants in this cause under the name and style as follows: Unknown Heirs, Devisees or Legatees of Linora P. Pacheco, Deceased.

(Emphasis added.) This allegation tracks the language of Section 39-5-15, which allows a foreclosure plaintiff to proceed by naming the unknown heirs, devisees, or legatees of a deceased defendant mortgagor under certain circumstances.

**D.    Service of the Amended Complaint and Default Judgment**

**{14}** A summons was issued on June 27, 2016, for the Unknown Heirs, Devisees, and Legatees of Linora Pacheco at the address of the Property. On September 30, 2016, a summons return was filed reflecting service on Jose Pacheco on September 28, 2016, at his address in Chamisal, New Mexico. Jose Pacheco and Linora Pacheco divorced twenty-five years before the promissory note and deed of trust. Jose Pacheco was subsequently dismissed as a party.

**{15}** On March 2, 2017, a Summons and Return for service on the Unknown Heirs, Devisees, and Legatees of Linora Pacheco was filed reflecting service on Raymond Pacheco "as *the Unknown Heir, Devisee and Legatee* of Lenora [sic] P. Pacheco on

7

February 24, 2017 at [the Property]" (emphasis added). It is important to note that the summons return reflects service on Raymond Pacheco in the singular as *the unknown heir, devisee, or legatee*, not on behalf of others. There was never a motion filed to serve the *Amended Complaint for Foreclosure* on the unknown heirs, devisees, and legatees of Linora Pacheco by publication.

{16} BOKF filed a *Motion for Default Judgment* on May 23, 2017. A *Certificate as to the State of the Record* was filed May 31, 2017, that reflects that the unknown heirs, devisees, or legatees of Linora Pacheco were served in two ways. First, it reflects they were served by publication in the Albuquerque Journal on May 25, June 1, and June 8, 2015. Second, it reflects that they were served by personal service on Raymond Pacheco as "the Unknown Heir, Devisee and Legatee of Linora P. Pacheco." It is unclear whether the *Certificate as to the State of the Record* was prepared and submitted by BOKF or prepared by the district court clerk.

{17} A *Stipulated and Default Judgment In Rem* was entered on June 29, 2017. The Property was sold at foreclosure with BOKF bidding its judgment. An *Order Approving Special Master's Report and Confirming Foreclosure Sale (No Deficiency)* was entered October 24, 2017.

## E. Attempts at Redemption and Appeals

{18} After the foreclosure sale, Kaushal obtained an assignment of redemption rights from Raymond Pacheco and Joseph Pacheco. Kaushal then filed a *Petition for Redemption of Real Estate* on November 8, 2017. The Trust also sought to exercise redemption rights and filed *Santa Fe Community Trust's Petition for Redemption* on November 27, 2017. Various disputes arose as to the validity of the competing petitions for redemption and the required deposit. After extensive litigation of the competing redemption petitions, the district court entered its *Order Granting Santa Fe Community Trust's Petition for Redemption and Motion for Summary Judgment* on July 16, 2018.

{19} Kaushal appealed. The Court of Appeals entered its opinion and the matter was remanded to the district court in *Kaushal v. Santa Fe Community Housing Trust*, 2021-NMCA-010, ¶ 28, 484 P.3d 1020. After more litigation and disputes, Kaushal again appealed, and the Court of Appeals subsequently entered a memorandum opinion and the matter was remanded to the district court in *Kaushal v. Santa Fe Community Housing Trust*, A-1-CA-39814, mem. op. ¶ 13 (N.M. Ct. App. May 16, 2023) (nonprecedential).

{20} Both parties sought review by this Court to address issues relating to the nature, scope, and effect of redemption rights and the proper application of the

9

doctrine of law of the case. We do not address the legal issues raised by the parties but instead decide this matter based on an analysis of the sufficiency of service of process and the impact on the underlying foreclosure judgment.

**II.    DISCUSSION**

**A.    Discretionary Review of Service of Process Issues to Be Raised by the Court for the First Time on Appeal**

{21}    Issues relating to the service of process and the validity of the underlying foreclosure judgment have not been previously raised by the parties or the Court of Appeals. Therefore, we must first decide whether we can and should raise the issues for the first time on appeal. We undertake that consideration mindful that, if we determine to raise the issues, we will not reach the issues that bring this matter before us after extensive litigation and appeals by the parties to this appeal over a period of many years.

{22}    In making the determination, we are guided by Rule 12-321(B) NMRA. Unlike subject matter jurisdiction, which can be raised at any time, the ability to raise and consider issues of the sufficiency of service of process for the first time on appeal is much more constrained. However, under Rule 12-321(B)(2)(a), (d), an appellate court may, in its discretion, raise an issue on its own for the first time on appeal where the issues involve "general public interest" or the "fundamental rights of a party." Both those circumstances exist in this matter.

10

{23} The interests of the general public mandate that we raise the issues for the first time on appeal. The general public must have confidence in the judicial system. It is our obligation to protect the guarantees of fairness, notice, the opportunity to be heard, and due process that undergirds both our judicial system and the validity of judgments affecting the rights of parties impacted by those judgments. In this case, we must address the issue of service of process to make sure that in this case and any subsequent lawsuit, litigants understand their obligations and the rights of parties are sufficiently protected.

{24} The fundamental rights of the heirs of Linora Pacheco are also implicated. The heirs of Linora Pacheco, whether known or unknown, held legal title immediately upon her death. NMSA 1978, Section 45-3-101(B)(3) (2011) of the Uniform Probate Code provides:

> B. Upon the death of a person, the person's separate property and the person's share of community property devolves:
>
> . . . .
>
> (3) in the absence of testamentary disposition, to the person's heirs or to those indicated as substitutes for them in cases involving revocation, lapse, disclaimer or other circumstances pursuant to Chapter 45, Article 2, Parts 3, 4, 10 and 11 NMSA 1978 affecting the devolution of intestate estates.

If anyone is entitled to notice and an opportunity to be heard in legal proceedings affecting rights to property, the owners of the property must stand at the top of the

11

list. Indeed, as owners holding legal title, their interests are superior to the lien claim of BOKF. "In this jurisdiction, it is well settled that a mortgage is merely a lien on, and passes no estate or interest in, the mortgaged premises." *State ex rel. Hill v. Dist. Court of Eighth Jud. Dist.*, 1968-NMSC-058, ¶ 8, 79 N.M. 33, 439 P.2d 551. Rule 1-025(A)(1) mandates that a motion to substitute parties be served on non-parties pursuant to Rule 1-004. Section 39-5-15 requires that when unknown heirs, devisees, or legatees are named, "service of process on and notice of said suit against such defendants shall be made as provided by law and the rules of court." The core purposes of service of process are to ensure notice and the opportunity to be heard. *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 26, 122 N.M. 524, 928 P.2d 250. It does not appear that the heirs of Linora Pacheco have been given proper notice or given the opportunity to assert any claims they may have had or to protect their interests in the Property. Their interests seem to have not been protected in this matter, resulting in the deprivation of their opportunity to assert their rights.

{25}   We reject the argument that the heirs have known about the proceedings and have not sought to intervene so we should not take action to protect their interests. We will not make any assumption of what the heirs knew or did not know. The argument ignores the requirements of service of process and the importance of effective notice of proceedings as the predicate for an opportunity to be heard. The

argument would shift the burden to appear on persons who have not received legal notice. Therefore, we conclude that we must raise issues relating to the service of process for the first time in this matter under Rule 12-321(B)(2)(a), (d).

**B. Foreclosure and Service of Process**

{26} A plaintiff who holds both a promissory note and a mortgage can pursue remedies under both at the same time or can elect remedies and sue under either theory. A foreclosure proceeding seeking to enforce a lien against the property is a quasi in rem action "affording relief only against the secured property, and a suit on a bond or note is in personam." *Kepler v. Slade*, 1995-NMSC-035, ¶ 8, 119 N.M. 802, 896 P.2d 482. A quasi in rem proceeding is generally defined as an action that "affects only the interest of particular persons in the specific property as distinguished from proceedings in rem which determine interests in specific property as against the whole world." *Hill*, 1968-NMSC-058, ¶ 4.

{27} In this case, BOKF sued Linora Pacheco to obtain a money judgment based on the promissory note and to foreclose its lien on the Property created by the deed of trust. Specifically, the prayer for relief in the *Complaint for Foreclosure* requested judgment against Linora Pacheco on the promissory note for the amounts due and also sought foreclosure of its lien under the deed of trust. Therefore, at the inception of this case, it was a proceeding both in personam and quasi in rem.

13

{28}    Even if this case is viewed as only invoking in rem jurisdiction, that fact does not change the analysis of service of process issues. The fact that a foreclosure proceeding is quasi in rem does not change the requirements for service of process on claimants to the property. "An in rem action is directed, not *against* the property per se, but rather at resolving the interests, claims, titles, and rights in that property. And it is persons—as individuals, governments, corporations—who possess those interests, claims, titles, and rights." *State v. Nunez*, 2000-NMSC-013, ¶ 78, 129 N.M. 63, 2 P.3d 264. Stated alternatively, a quasi in rem proceeding is not a safe harbor from proper service of process and does not supplant the requirements of due process.

{29}    As early as our territorial days, New Mexico recognized the requirement of proper service in quasi in rem and in rem proceedings. In *Robertson v. Mine & Smelter Supply Co.*, the Court held that a judgment in foreclosure was void where the property owners were not served. 1910-NMSC-053, ¶¶ 2, 5, 15 N.M. 606, 110 P. 1037. Similarly, *First Nat'l Bank v. Julian* involved a dispute over the division of proceeds from a foreclosure sale where a counterclaimant did not serve the property owner personally for personal jurisdiction or by publication for in rem jurisdiction. 1981-NMSC-049, ¶¶ 6-7, 96 N.M. 38, 627 P.2d 880. Despite the lack of service of the counterclaim, the Court held that there was jurisdiction under the unique facts of

14

the case where the property owner had been served with the complaint and amended complaint and was already subject to the jurisdiction of the district court. *Id.* ¶¶ 7-9. In reaching its holding, however, the Court made clear, "We do not hold that service as provided by N.M.R. Civ. P. 5, N.M.S.A. 1978 (Repl. Pamp. 1980) and other rules can be discarded as an essential step in the normal lien foreclosure process." *Id.* ¶ 7.

{30} The Court examined the requirements of service of process in *McElvain*, 2017-NMSC-004, ¶ 25, an in rem action to quiet title, stating:

> The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits deprivation of property absent adequate procedural safeguards. U.S. Const. amend. XIV, § 1. The right to be heard in a court of law in response to proceedings seeking to deprive one of one's own property is a fundamental requirement of due process. 'The fundamental requisite of due process of law is the opportunity to be heard.' *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (internal quotation marks and citation omitted). 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Id.* (citations omitted). A judgment entered absent sufficient service of process upon a defendant violates due process and is void as to the defendant for want of personal jurisdiction.

The Court went on to note:

> To meet the fundamental requirements of due process, a plaintiff must undertake a diligent and good faith effort to locate defendants and serve them personally with notice. But personal service is not always feasible, and in such cases constructive notice may satisfy due process.

*Id.* ¶ 26 (citation omitted).

15

{31} Turning to the facts in this case, it does not appear that service of process on the heirs of Linora Pacheco, if they were properly named, was made as required by Rules 1-004 and 1-025, and Section 39-5-15. It goes without saying that the only way to serve unknown parties, such as unknown heirs, devisees, or legatees, is through constructive service by publication. Obviously, that is true simply because the identity and whereabouts of the persons are supposed to be unknown. There was never a motion filed to serve the unknown heirs, devisees, or legatees of Linora Pacheco by publication after they were substituted as parties as the legal owners of the Property. Such a motion would have to be supported by an affidavit that detailed the diligent effort by BOKF to locate the unknown heirs, devisees, or legatees of Linora Pacheco and show why they could not be identified, located, or served. Rule 1-004(J). The unknown heirs, devisees, or legatees of Linora Pacheco were not served by publication at any stage of the proceedings.

{32} Two heirs of Linora Pacheco—Raymond and Bryan Pacheco—were known and should have been individually named as parties and personally served. Neither was named as a party. Raymond Pacheco was served, but purportedly only as an unknown heir.

{33} There is a looming question whether the remaining heirs could have been identified, individually named, and personally served. There is a sufficient basis in

16

the record to suggest that they could have been found and that there was not a meaningful effort to do so. Even if there were unknown heirs and Section 39-5-15 applied, there had to be service on them.

{34} The genesis of all the issues relating to whether there was proper and sufficient service of process on the heirs of Linora Pacheco and whether the *Stipulated and Default Judgment In Rem* may be void stem from BOKF's use of and reliance on Section 39-5-15 to name the unknown heirs, devisees, or legatees of Linora Pacheco. BOKF appeared to invoke Section 39-5-15 in its Amended Complaint when it effectively substituted Linora Pacheco's unknown heirs, devisees, or legatees as primary defendants to the suit. However, it appears that BOKF failed to satisfy the requirements of that provision. We, therefore, must address Section 39-5-15 to confirm the prerequisites for its proper use and application and to confirm the role of counsel and the court in this case and in the future. Doing so will protect potential heirs' rights to notice and the ability to be heard, as well as protect against possible undue reliance on or misuse of Section 39-5-15.

**C.     Proper Use and Application of Section 39-5-15 to Protect Rights to Notice**

{35}     "The meaning of the language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. "In determining the meaning of a statute, we start with its language.

17

We give statutory language its ordinary and plain meaning unless the legislature indicates a different interpretation is necessary. Unless ambiguity exists, this Court must adhere to the plain meaning of the language." *Zangara v. LSF9 Master Participation Tr.*, 2024-NMSC-021, ¶ 10, 557 P.3d 111 (internal quotation marks and citations omitted).

{36} We begin with the statute itself. Section 39-5-15 provides:

> In all actions brought for the foreclosure of any real estate mortgage or deed of trust where the plaintiff alleges in his complaint that any person who is now deceased, during his lifetime, claimed a lien upon the real estate described in said mortgage or trust deed and further alleges either that there has been no administration of such decedent's estate, or that the plaintiff is unable to ascertain the names, residences and whereabouts of the heirs, devisees or legatees of such deceased person he may make such unknown heirs, legatees and devisees of any such deceased person parties defendant to said cause under the name, style and designation of 'unknown heirs, devisees, or legatees, of (here insert name of deceased person), deceased'; and service of process on and notice of said suit against such defendants shall be made as provided by law and the rules of court.

{37} Section 39-5-15 aims to enhance the efficiency and cost-effectiveness of foreclosure proceedings in situations where the mortgagor has died and there is either no probate or the heirs are unidentified or cannot be located. Although this provision benefits plaintiffs, it also imposes a responsibility—they must ensure it is utilized only in appropriate cases, prevent any potential misuse, and establish a clear record justifying its application.

18

{38} In effect, Section 39-5-15 allows the plaintiff to proceed quasi in rem solely against the property and establishes the procedure for doing so under the conditions defined in the statute. Proceeding quasi in rem solely against the property based on Section 39-5-15 eliminates the possibility of a deficiency judgment. Alternatively, a plaintiff could seek to enforce its claim for a money judgment in the absence of an existing probate proceeding. To do so, the plaintiff would have to file a probate proceeding and seek an appointment as a personal representative. NMSA 1978, § 45-3-103 (1975); NMSA 1978, § 45-3-104 (1975); NMSA 1978, § 45-3-203(A)(6) (2017).

{39} With the benefit of Section 39-5-15 comes obligations to limit its use to the specific circumstances set out in the statute and to comply with its requirements for service. A plaintiff seeking foreclosure must establish that Section 39-5-15, in fact, applies to the case. The mere fact that the defendant debtor is deceased is not enough. Section 39-5-15 must be construed consistent with the recognized fundamental requirements of due process that "a plaintiff must undertake a diligent and good faith effort to locate defendants and serve them personally with notice." *McElvain*, 2017-NMSC-004, ¶ 26. In other words, Section 39-5-15 does not supplant the obligation of a plaintiff to undertake the diligent search mandated by due process. Rather, an allegation that the plaintiff determines there is no estate administration or that the

names and whereabouts of the heirs, devisees, or legatees cannot be ascertained assumes that the plaintiff has conducted a diligent and good faith search for the heirs and is able to establish that it has done so. To construe Section 39-5-15 otherwise would undermine due process and ultimately deprive property owners of notice and the opportunity to be heard.

{40} Requiring a diligent and good faith search does not impose a significant burden or require significant costs. In addition to traditional tools historically used to locate persons, simple internet searches will often result in identifying and locating heirs. An internet search for an obituary of the deceased person often leads to an obituary that has either been published in a newspaper or posted by a funeral home on its website.[5] Focused internet searches can easily be done on websites for local newspapers and funeral homes in the location where the person died. Once potential heirs are identified, the internet offers a myriad of resources, websites, and applications that can be used to locate persons at little or no cost. There are numerous public websites that are available online to find potential heirs. The availability of

---

[5]The Trust found an obituary from a funeral home for Linora Pacheco, which it attached to its pleadings seeking to enforce redemption rights after the foreclosure sale. That obituary reflected that Linora's son Richard lived in Chamisal, New Mexico, and her sons Raymond, Bryan, and Joseph lived in Santa Fe, New Mexico.

internet tools makes conducting the good faith and diligent effort to find heirs easier and more cost-efficient.

{41} An evidentiary showing of the good faith and diligent effort and the basis for invoking Section 39-5-15 to name unknown heirs, devisees, or legatees must be made on the record prior to entry of judgment. That is true whether the unknown heirs are initially named as the primary defendants or substituted as parties at a later time. This case is a prime example of why that must be the case. BOKF was able to amend its complaint to name the unknown heirs, devisees, or legatees without making a showing that Section 39-5-15 applied or that it had complied with Section 39-5-15. BOKF then obtained a judgment without doing so.

**D.     Service on Unknown Heirs, Devisees, or Legatees**

{42} In all instances where the unknown heirs, devisees, or legatees are named, service must be made by substituted service by publication. To do so, a plaintiff must file an affidavit under Rule 1-004(J). That affidavit must document the good faith and diligent search conducted to locate any potential heirs. Prior to entry of judgment, the trial court must satisfy itself that an adequate search has been completed and that there is a proper basis to name the unknown heirs, devisees, or legatees under Section 39-5-15 and serve them by publication. Rule 1-004(J). Similarly, where there is a request to amend a complaint to substitute unknown heirs,

devisees, or legatees, an affidavit could be included either with the motion to show that there is a basis to substitute the unknown heirs, devisees, or legatees under Section 39-5-15 as parties or with a motion for service by publication.

{43}   If there is a request for default judgment against the unknown heirs, devisees, or legatees, a mere allegation in a complaint that is not supported by an affidavit is insufficient to establish that an adequate search has been completed and that there is a proper basis to name the unknown heirs, devisees, or legatees under Section 39-5-15. Requiring an independent showing for invoking Section 39-5-15 protects against potential misuse or misapplication of the statute and, more importantly, protects the rights of owners of property.

{44}   In this case, the allegations by BOKF in paragraph 3 of the *Amended Complaint for Foreclosure* that the names and locations of the heirs were unknown and could not be ascertained are simply incorrect and contrary to the affidavit submitted by BOKF in seeking to serve Linora Pacheco by publication. In fact, BOKF had actual knowledge of the names and whereabouts of two heirs, Raymond Pacheco and Bryan Pacheco, who were living at the Property. The fact that Kaushal and the Trust were able to identify and locate the other heirs suggests that BOKF's allegation of a diligent search to ascertain the names and locations of Linora Pacheco's heirs, as well as the assertion that information regarding the heirs was

22

both unknown and could not be determined, is suspect. This is significant because it may indeed be the case that the identity and location of Linora Pacheco's heirs were either known or easily discernible. But, yet again, based on the record, we do not know. The record is devoid of any meaningful showing of any search conducted by BOKF or what efforts and actions the search may have entailed if one was done.

{45} Legal title to the Property of Linora Pacheco passed automatically upon her death to her heirs. Section 45-3-101(B). However, neither Raymond Pacheco nor Bryan Pacheco were named individually as defendants despite the fact that BOKF had knowledge of their identity and location. Effectively, they were never named, joined, meaningfully disclosed to the district court, or served.

{46} In sum, the *Amended Complaint for Foreclosure* may be impermissibly flawed in two respects. It fails to name individual known owners of the Property and heirs of Linora Pacheco. Perhaps more importantly, the allegation used as the basis for naming the unknown heirs, devisees, or legatees is simply incorrect and contrary to the affidavit of the process server that BOKF previously submitted. As a result, the unknown heirs, devisees, or legatees may not have been properly named under Section 39-5-15.

{47} We now return to the analysis of service of process on the unknown heirs, devisees, or legatees of Linora Pacheco in light of the procedural history. Simply

23

put, it does not appear from the record that there was service of process by publication on the unknown heirs, devisees, or legatees of Linora Pacheco, even if they were properly named.

{48} There was never a motion filed to serve the unknown heirs, devisees, or legatees of Linora Pacheco by publication and no service by publication occurred. BOKF's motion for default judgment was predicated on the *Certificate as to the State of the Record*. The service by publication referred to in the *Certificate as to the State of the Record* was the attempted service by publication on Linora Pacheco prior to her death, not any service by publication on the unknown heirs, devisees, or legatees of Linora Pacheco as required by Rules 1-004 and 1-025 as well as Section 39-5-15.

{49} The *Certificate as to the State of the Record* also refers to service on Raymond Pacheco. Service on Raymond Pacheco, a known heir of Linora Pacheco, cannot be construed as service on all the unknown heirs, devisees, or legatees of Linora Pacheco. Even if service on Raymond Pacheco, a known heir, can somehow be construed as service on him as an unknown heir, the remaining known and the unknown heirs, devisees, or legatees of Linora Pacheco were never served as required by Rules 1-004 and 1-025 as well as Section 39-5-15.

{50} We also note concerns about service of the motion to amend the complaint to substitute the unknown heirs, devisees, and legatees. The motion did not include an explanation of how Section 39-5-15 allowed the unknown heirs, devisees, or legatees to be named and did not include an affidavit to show that Section 39-5-15 had been complied with. In effect, the motion to amend was a motion to substitute parties. Rule 1-025(A)(1) provides, in part:

> The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 1-005 NMRA and upon persons not parties in the manner provided in Rule 1-004 NMRA for the service of a summons.

Where parties are to be substituted, they must be served with the motion. However, that did not happen. There is nothing in the record to show service of the motion was made on known non-parties under Rule 1-004 pursuant to Rule 1-025.

{51} Generally, "the determination of whether personal jurisdiction exists is a question of law, which an appellate court reviews de novo when the relevant facts are undisputed." *Caba Ltd. Liab. Co. v. Mustang Software, Inc.*, 1999-NMCA-089, ¶ 9, 127 N.M. 556, 984 P.2d 803. We conclude that there are issues of fact that must be determined by the district court for that determination to be made. For example, the district court should determine the basis for the allegations that the heirs of Linora Pacheco were unknown and could not be determined. The district court must

25

also determine who submitted the *Certificate as to the State of the Record* and where the information came from. The district court will also have to determine whether BOKF made a good faith effort to identify or locate the heirs of Linora Pacheco. Finally, BOKF is not a party to this appeal. Much of the conduct at issue involves BOKF, and it should have the opportunity to participate in the determination and resolution of the issues we raise. Therefore, we conclude that this matter must be remanded to the district court to determine whether the *Stipulated and Default Judgment In Rem* is void consistent with this opinion.

**E.    Service by Publication on Linora Pacheco**

{52}    Because the district court may also have to address the service by publication on Linora Pacheco as a basis for jurisdiction supporting the judgment, we undertake to examine it.

{53}    We start with the premise that "[p]rocess shall be served in a manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." Rule 1-004(E)(1). This is true with service by publication as well. Rule 1-004(J). In *McElvain*, we made "clear that constructive service of process by publication satisfies due process if and only if the names and addresses of the defendants to be served are not 'reasonably ascertainable.'" 2017-NMSC-004, ¶ 31

26

(quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983)). Importantly, we also emphasized:

> Notice of court proceedings cannot just be a mere gesture, else it will not pass constitutional muster—'[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.'

*McElvain*, 2017-NMSC-004, ¶ 27 (quoting *Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 315 (1950)).

{54} We now turn to the facts of this case. Service by publication was based on affidavits submitted with the motion for service by publication. The affidavit of the process server established only that Linora Pacheco lived in "Vegas." "Vegas" could refer to either Las Vegas, New Mexico, in San Miguel County or Las Vegas, Nevada in Clark County. The affidavit of the investigation agency was ostensibly submitted to establish that the whereabouts of Linora Pacheco could not reasonably be ascertained after a diligent search. A review of the affidavit leaves one to question what, if any, diligent search was conducted. *See McElvain*, 2017-NMSC-004, ¶ 1 ("Only when a party's whereabouts are not reasonably ascertainable following diligent search and inquiry can constructive notice substitute for personal notice of suit."). The affidavit is terse, arguably inconsistent, and wholly lacking in necessary supportive information. It amounts to nothing more than a declaratory statement.

27

The affidavit provides no details of what efforts were undertaken in any search, what tools or means were utilized to conduct a search, whether the search included internet resources and services or public databases, or other details of the search. In sum, the affidavit does not disclose the nature of the search so that a court could determine whether service by means other than publication could or could not be made. In addition, there was no supporting information that a court could use to determine what newspapers the notice should be published in.

{55} The notice was published in the Albuquerque Journal based on the district court's finding in the *Order for Service by Publication* that "The court further finds that the newspaper of general circulation in the county that is most likely to give Defendant notice of pendency of the action is *The Albuquerque Journal*." We do not question that finding. However, Rule 1-004(K)(1) instructs a court to require that notice be published in a newspaper that is most likely to give a defendant notice under certain circumstances. The rule provides, in part:

> Unless a newspaper of general circulation in the county where the action is pending is the newspaper most likely to give the defendant notice of the pendency of the action, the court *shall also order* that a notice of pendency of the action be published in a newspaper of general circulation in the county which reasonably appears is *most likely to give the defendant notice of the action*.

Rule 1-004(K)(1) (emphasis added). Although this proceeding was brought in Santa Fe County, where the Property is located, it was known that Linora Pacheco lived in

"Vegas." It is not uncommon for an action to be pending in one county, and a defendant who is to be served by publication live in another. We stress that many communities in New Mexico outside of Albuquerque are served by local newspapers. Those local newspapers are generally considered by citizens of the community as the primary source for local news, such as sports, events, and local government. As such, local newspapers are most likely to provide notice to a local resident in that community. Even if the person does not see the notice in the newspaper, often someone they know will see it and alert the person. The district court did not address in the *Order for Service by Publication* whether publication in a local newspaper in Las Vegas, New Mexico was required pursuant to Rule 1-004(K)(1). Nor did the court inquire whether "Vegas" indicated Las Vegas, New Mexico or Las Vegas, Nevada. Should the district court examine the service by publication on remand, the lack of publication in a local Las Vegas, New Mexico newspaper or in a newspaper serving Las Vegas, Nevada is a factor the court may consider.

**F.    Court of Appeals Published Opinion and Memorandum Opinion**

{56}    The district court's determination on remand whether the *Stipulated and Default Judgment In Rem* is void could materially affect whether the Court of Appeals prior rulings are valid precedent. If the *Stipulated and Default Judgment In*

29

*Rem* is void, then the subsequent sale and redemptions are similarly rendered moot, as if they never happened. In that case, the Court of Appeals' rulings are reduced to advisory opinions and removed from any justiciable controversy. As a result, they should not be relied on as precedent in any future case. Therefore, the only appropriate thing for us to do is require that they be set aside.

**{57}** *Kaushal*, 2021-NMCA-010, shall be vacated and unpublished, and *Kaushal*, A-1-CA-39814, mem. op., shall be vacated.

## III.    CONCLUSION

**{58}** Following the death of Linora Pacheco, BOKF sought to enforce its rights under the promissory note and deed of trust by naming her unknown heirs, devisees, or legatees. For the reasons we have discussed, the *Stipulated and Default Judgment In Rem* may be void for lack of proper service of process on her unknown heirs, legatees, and devisees who were named as parties under Section 39-5-15, as well as failure to name and obtain service of process on the known heirs of Linora Pacheco.

**{59}** We conclude that this matter must be remanded to the district court for further fact-finding and a determination of the validity of the *Stipulated and Default Judgment In Rem*. As a matter of necessity to avoid future undue reliance on the Court of Appeals rulings if the judgment is void, *Kaushal*, 2021-NMCA-010, shall

be vacated and unpublished, and *Kaushal*, A-1-CA-39814, mem. op., shall be vacated.

{60} Therefore, this case is remanded to the district court for further proceedings consistent with this opinion.

{61} **IT IS SO ORDERED.**

<br>

**JAMES M. HUDSON, Judge**
**Sitting by designation**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**

**CURTIS R. GURLEY, Judge**
**Sitting by designation**

31